STATE *against* JOHN SMITH.

On an indictment for horse-stealing, whatever may be the circumstances of the taking, it must be left to the Jury to determine whether taken with a felonious or furtive intent.

INDICTMENT for horse-stealing.

The defendant was indicted, for that at *Charlotte*, in this County, on the 10th day of *August*, A. D. 1802, he feloniously took, stole, and carried away a certain bay mare of the value of 130 dollars, of the proper goods and chattels, and from the possession of *Nathaniel Newell*, contra formam statuti.

He was arraigned, pleaded not guilty, and put himself on the country for trial.

On the trial the following facts appeared in evidence :

That the prisoner had occasionally lived with *Newell* as a hired servant at several times for several years, and once for three months in succession. That he let himself to *Newell* as a day labourer during part of the hay season, and had commenced his la-

bours one week before the taking of the mare. That on the 8th of *August*, *Newell* went a short journey, and during his absence the prisoner applied to his son to borrow the mare to ride to *Colchester*, about 20 miles. The son observed to him, that his father would be unwilling to have the mare rode, as she was lame. The prisoner replied, " I asked your father to let me ride her to *Colchester*, and he told me he could not, as she was lame ; but soon after he looked at her hoof, and observed, that it would do her good to ride her moderately, and that I might have her." The son then said, " If you will take her, it must be at your own risk : remember, I forbid you." The prisoner then rode the mare away, and was not seen again until the first of *January* following ; when he was observed passing through *St. Albans* on his return from the Province of *Lower Canada*, and accosted by a witness who knew the circumstances. When charged by the witness with stealing, he observed, " I know I have done wrong in going off with the mare and selling her ; but I did not intend to steal her, for I am now going to *Charlotte* to see Capt. *Newell*, and settle the business."

On the second of *January*, the prisoner came to *Burlington*, and went to Mr. *Russell's* house, who was concerned in trade with *Newell*, and inquired for Capt. *Newell's* clerk. *Russell* knowing the prisoner, told him to go into the house and he would send the clerk to him, which he did, and then went to a magistrate for a warrant to apprehend him. When the clerk came in, who was *Newell's* son, who had forbidden him to take the mare, the prisoner appeared much confused ; but on being interrogated by the clerk, he acknowledged that the whole account he

State
v.
Smith.

had given to him respecting his father's looking at the mare's hoof, and giving him liberty to ride her to *Colchester*, was a mere fabrication in order to get possession of the mare ; that he rode the mare to *Canada*, and *swopped* her at *Chateaugey* for another mare, and gave the saddle to boot ; but that he was now going to see his father, and would settle the business ; that he had a horse with him worth 80 dollars, which he intended to let him have.

On the prisoner's being apprehended and carried before the Court of Inquiry, *Newell* appeared, and accused the prisoner of stealing his mare ; and observed, " *Smith*, you lied to my son ; you know I never gave you liberty to ride the mare to *Colchester*." The prisoner replied, " That is very true ; but I was obliged to tell that story in order to get the mare. I have done very wrong ; but I was on my way to *Charlotte* to settle the business with you. I certainly never meant to steal the mare."

The question made was, whether these facts show a felonious taking of the mare by the prisoner.

It was insisted by

*Hitchcock*, in the defence, that the felonious intent must exist and accompany the act of taking ; that if there were no such intent at that time, though afterwards the captor convert the property taken, it is not theft.

That the prisoner was servant to the prosecutor, and as such, if he took the mare without the master's leave, or against his express directions, if he voluntarily returned her again, it was not theft, but trespass ; and that the showing a willingness, and offering

to pay amply for the property taken, amounted to the same thing.

That Judge *Blackstone* lays it down, " that the ordinary discovery of a felonious intent is where the party doth it clandestinely, *or being charged with the fact, denies it. Bl. Com.* vol. 4. p. 332. That this did not appear to be the fact in the present case, for that the prisoner always owned the taking, and acknowledged that he did wrong, that is, that he had committed a trespass, always protesting that he never intended to steal, and was willing, and even was on his way, to make restitution when he was apprehended.

That if there were any thing criminal in the transaction, it was not the crime charged in the indictment; it was merely obtaining property by false pretences, and the indictment should have been founded on the 29th section of the act for the punishment of certain capital and other high crimes and misdemeanors.

The State Attorney insisted, that the fraudulently and deceitfully obtaining property with a design to eloign it, is such a felonious taking as will constitute theft. He cited *Rex* v. *Charlewood,* 1 *Leach,* 456. *Rex* v. *Aikles,* ib. 330. and *Hawkins's Pleas of the Crown,* vol. 2. p. 134.

That the prisoner took the property clandestinely, in the absence and without the privity of the owner. Here was no contract, no delivery, either of property or possession, and therefore the question so much agitated in *England* between larceny and swindling could not arise.

State
v.
Smith.

*Vermont* Stat,
vol. 1. p. 333.

. That the prisoner's being apprehended on his way to attempt a compromise with the owner, could not affect the public prosecution for the crime. He went to compromise all that it was in the owner's power to accommodate, which was the civil injury he had sustained, but the owner could not compound a felony.

The Court, in their charge to the Jury, after stating the evidence, minutely observed,

That in order to find a verdict, they must search for the prisoner's intent in taking the mare.

That if they were convinced beyond any rational doubt, that the prisoner took the mare with a fraudulent design to convert her to his own use, they must find him guilty.

That the law upon this subject had been variously and perhaps too nicely considered, insomuch that the learned Judge *Hale* had observed, in a systematic treatise, " that the circumstances evidencing a *felonious intent*, are so various that it is impossible to prescribe them."

Hale's P. C.
509,

That although cases may arise from the wicked ingenuity of men, who fraudulently deprive others of their property, which may not be readily classed under precedents, or placed within the scope of known and established principles, which might embarrass even professional men; yet the sound and unsophisticated reason of jurors would readily enable them to draw a just conclusion of the prisoner's guilt or innocence from an impartial and attentive consideration of the facts testified.

The Jury would therefore, from a view of the facts, determine whether the prisoner, at the time of his

taking the mare, intended or did not intend to steal her; and as they found this, return their verdict accordingly.

State
v.
Smith.

As to what had been said in the prisoner's defence, that this indictment should have been laid upon the 29th section of the act for the punishment of certain capital and other high crimes and misdemeanors, as obtaining property by false pretences, the Court would observe, that the statute referred to seemed to contemplate cases where money, goods, or chattels are obtained by *contract* on false pretences, or where the property is parted with by consent fraudulently obtained; but in the present case there is neither contract or consent. *Newell* the owner never gave any, and his son forbade the prisoner to take the mare.

The Jury found the defendant guilty.

*William C. Harrington*, for the State.
*Samuel Hitchcock*, for the defendant.