STATE OF VERMONT *v.* LOUIS LEVY.

January Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed February 1, 1944.

*Raymond B. Daniels* and *George L. Hunt* for the respondent.

*Joseph W. Foti,* Grand Juror, for the State.

MOULTON, C. J.  When this cause was here before (113 Vt 374, 34 A2d 370) the respondent's plea to the jurisdiction was dismissed, and it was ordered to stand for hearing upon his exceptions taken on trial.  These exceptions have now been argued.  They relate to the denial of the several motions for a directed verdict of acquittal, to set aside the verdict and for judgment *non obstante.*

The offense charged is the larceny of an overcoat, the property of Carroll Duke, on May 14, 1943, and there is no material conflict in the testimony.  The sequence of events is as follows: Duke went to the Victory Restaurant in Montpelier, along with three companions, on the evening of the day alleged.  He hung his overcoat on a rack attached to a booth in which the respondent and his wife were sitting.  There were a number of other people in the room and several other coats were hanging on the rack.  When Duke was about to leave the restaurant he found only one coat left on the rack, which was not his, but similar to it in appearance and color.  Although there is no direct testimony to the fact it is to be fairly inferred that the respondent had left before that time. Duke made inquiries of the proprietor, without result, and wore the coat home.

On the evening of May 15th, the respondent and his wife along with Mr. and Mrs. Robert Carr, Mr. and Mrs. Louis Belanger and Philip Iverson, went to a restaurant known as the Venetian Terrace.  They left about a quarter to ten o'clock, and went to still another eating place called the Brown Derby, where they remained until nearly midnight, when they all went to the Carrs' residence.  The respondent was wearing his own overcoat up to the time he reached the Brown Derby, but as he was leaving the Carr's house, he discovered that he had the coat later identified as belonging to Duke, which, like the one left at the Victory Restaurant, was similar in color and appearance to his own.  The next

day he made inquiries at the Brown Derby to discover whether anyone had lost a coat, and telephoned and called upon some of the other patrons of the restaurant, but gained no information. He also advertised for his coat in two daily newspapers. He did not wear Duke's coat but kept it in his automobile.

On the evening of May 28, Duke went again to the Victory Restaurant and saw the respondent there. He was not acquainted with him and did not know his name, but, remembering his presence on the former occasion, asked him whether he had an overcoat that did not belong to him. The respondent at once replied that he had and produced the coat from his automobile. Duke claimed it as his, and offered the one that had been left in its place to the respondent, who tried it on, found that it did not fit him, and denied that it was the one he had lost. The two then went to the Brown Derby, where Duke was informed by the proprietor that the respondent had lost his coat there. Duke offered no proof of his ownership beyond his own statement, and accused the respondent of stealing the coat, and the respondent, being angry at the accusation, and admitting that he did not own it, refused to give it up until his coat was returned to him, but later surrendered it.

■■ Larceny is defined as "the taking and removing, by trespass, of personal property, which the trespasser knows to belong either generally or specially to another, with the felonious intent to deprive him of his ownership therein." 2 Bishop, New Criminal Law (8th ed) para. 758. It follows that the taking of another's property in good faith by inadvertence or mistake does not constitute larceny. *Wilson* v. *State,* 96 Ark 148, 131 SW 336, 41 LRANS 549, 552, Ann Cas 1912B 339; *People, ex rel Perkins* v. *Moss,* 187 NY 410, 80 NE 383, 11 LRANS 528, 531, 10 Ann Cas 309; *State* v. *Sawyer* 95 Conn 34, 110 A 461, 462, 13 ALR 139.

■■ Where, as here, the evidence relied upon to support a conviction is merely circumstantial, it must be so cogent as to exclude every reasonable hypothesis consistent with the respondent's innocence. *State* v. *Goodhart,* 112 Vt 154, 158, 22A2d 151; *State* v. *Boudreau,* 111 Vt 351, 360-1, 16 A2d 262, and cases cited in these opinions. A verdict of acquittal should be directed on motion by the respondent, when the evidence raises only a suspicion

of guilt, however strong, or leaves it uncertain or dependent upon conjecture. *State* v. *Rounds,* 104 Vt 442, 449, 160A 249.

The evidence shows that the respondent had the opportunity, but not the exclusive opportunity, of taking the overcoat at the Victory Restaurant on the evening of May 14. Standing along this circumstance would not be sufficient to justify a finding of a taking at that place and time. See 1 Wigmore Evidence (2 ed) para. 132. It is argued, however, that the fact that the coat was later found in the respondent's possession made it incumbent upon him to explain how he came by it, and that whether his explanation was satisfactory or such as to raise a reasonable doubt as to his guilt was for the jury to determine. In *State* v. *Ashey,* 86 Vt 479, 86A 308, upon which the State heavily leans, the respondent sold two bridles, the property of the complaining witness, representing to the purchaser that he had obtained them from an unidentified person in exchange for intoxicating liquor. He had previously been seen on the premises of the complaining witness. He introduced no evidence in his defense, and whether the explanation of his possession, as testified to by the purchaser, was satisfactory was held to have been properly submitted to the jury. In the present case the evidence in behalf of the respondent was uncontradicted. He not only took the stand himself but called nine other witnesses, all of whom, so far as appears, were credible and unimpeached in any way. His testimony that he had his own coat when he went to the Brown Derby was corroborated by two of them; others supported him in his account of the time and circumstances of his discovery that he had a coat that did not belong to him, and his efforts to find its owner. Toward the end of the trial, counsel for the State, in reply to a question by counsel for the respondent, stated that he had not disputed the fact of the discovery of the wrong coat, both question and answer plainly referring to the time of leaving the Carrs' house, and the Court thereupon remarked, in effect, that no further evidence upon the point need be introduced. The respondent then rested and the State offered no evidence in rebuttal. It is not claimed that the respondent's temporary refusal to give up the coat until his own should be produced is sufficient to show a taking with felonious intent; in fact it is equally consistent with a natural indignation at being accused of

theft and an erroneous assumption of a right to retain it for the purpose of getting back his own garment.

It cannot be said that the evidence was such as to exclude every reasonable hypothesis consistent with the respondent's innocence, or to remove the issue from the realm of uncertainty and conjecture. A verdict of not guilty should have been directed. It is unnecessary to consider the merits of the other motions.

*Judgment reversed. Verdict and sentence set aside and respondent discharged.*