State of Vermont v. Kent A. Hanson

[446 A.2d 372]

No. 10-81

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and
Daley, J. (Ret.), Specially Assigned

Opinion Filed April 22, 1982

*John J. Easton, Jr.,* Attorney General, *Edwin L. Hobson, Jr.,* Assistant Attorney General, and *Sienna Walton* and *Christopher Micciche,* Law Clerks (On the Brief), Montpelier, for Plaintiff.

230

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Ellen Coogan,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** The hapless defendant and a companion came to rest in a Walden snowbank in the early morning hours of March 13, 1980, after a journey which began in Rutland the night before and took them between times to Burlington, Waterbury, Stowe and Montpelier in a succession of vehicles driven at speeds of up to 110 miles per hour. The defendant was subsequently charged with grand larceny of the car he was apprehended in, and with breaking and entering in the nighttime with intent to commit larceny. After trial by jury he was convicted of both crimes and now appeals that conviction on two grounds: error in the jury instruction and insufficient evidence to convict.

The facts of this case flavor the issues. The defendant and his friend, suspecting that the police were looking for them, fled Rutland in a pick-up truck they had taken without consent. They headed for Waterbury, where the defendant sought to pick up some medication. The truck was low on gas so they stopped at a service station, filled the tank, and left without paying. Still, even with gas, the truck was unsatisfactory. It drove too slowly and had no radio.

The pair stopped at a Chevrolet dealership in Waterbury to get another vehicle. The first car they took after admitting themselves to the garage turned out to have a faulty transmission, and after driving a short distance they returned it. The second car they attempted to take was in excellent condition, but somehow, after starting the engine, they managed to lock both doors with the keys inside and the motor running. Finally a third car was chosen, its keys were located, and license plates were taken from the first car and put in place. The two then headed for Montpelier, the defendant driving the car and his friend following in the truck, which they planned to abandon elsewhere.

This third car too was low on gas, so once again they stopped at a service station, filled up, and left without paying. This time the attendant called the police, who arrived to investigate.

Meanwhile the defendant and his friend had abandoned the truck on a back road near Montpelier, and, thinking they were in the clear, continued on. As it happened, however, the road circled back toward Montpelier and the unfortunate pair came out near the same service station they had just visited. Seeing the police, the defendant made a U-turn and the chase began, ending abruptly when defendant's car hit a patch of ice, catapulting it into the snowbank.

The first question raised on appeal is whether the trial court was obligated to instruct the jury that it could find the defendant guilty of the unlawful taking of tangible property, 13 V.S.A. § 3833, as a lesser included offense of 13 V.S.A. § 2501, grand larceny.

Our law in this area has been clearly spelled out: in order for a defendant to be entitled to jury instruction on a lesser offense than that for which he is charged, the elements of the lesser offense must necessarily be included within the greater offense. *State* v. *Bourn*, 139 Vt. 14, 15, 421 A.2d 1281, 1281 (1980); *State* v. *Nicasio*, 136 Vt. 162, 164, 385 A.2d 1096, 1097 (1978). What remains in any specific case is an examination of each offense to determine if the requisite identity of elements exists.

Our grand larceny statute, 13 V.S.A. § 2501, provides as follows:

A person who steals from the actual or constructive possession of another, other than from his person, money, goods, [or] chattels . . . shall be imprisoned not more than ten years or fined not more than $500.00, or both, if the money or other property stolen exceeds $100.00 in value.

Stealing has been defined at common law, and identified in our case law, as:

[T]he taking and removal, by trespass, of personal property, which the trespasser knows to belong to another, with the felonious intent to deprive him of his ownership therein.

*State* v. *Grant*, 135 Vt. 222, 224, 373 A.2d 847, 849–50 (1977); *State* v. *Levy*, 113 Vt. 459, 461, 35 A.2d 853, 854 (1944). This

larcenous intent has in turn been further defined in Vermont as an intent to take and keep property of another wrongfully, *State* v. *Reed*, 127 Vt. 532, 538, 253 A.2d 227, 231 (1969), so that the trespasser may appropriate it for his own purposes. Thus, larceny was not committed here unless the defendant intended to permanently separate the owner from his property, or at least deliberately act so as to make it unlikely that the owner and his property would be reunited. 3 Wharton's Criminal Law § 363, at 333–34 (1980).

By contrast, 13 V.S.A. § 3833, unlawful taking of tangible personal property, demands that:

> A person who, without the consent of the owner, takes and carries away . . . any tangible personal property with the intent of depriving the owner temporarily of the lawful possession of his property shall be fined not more than $100.00 . . . .

■ The language of this statute leaves little room for doubt that the criminal intent involved in this offense is a different intent than that which is implicated in the crime of grand larceny, or that the two intents are mutually exclusive. Still, the defendant argues that the lesser offense is included in the greater offense because anyone who intends to cause a permanent deprivation must also intend to cause a temporary deprivation, "some" time being a necessary component of "all" time. The suggestion appears to be that the intent to permanently deprive is but a succession of lesser intents to temporarily deprive. We do not agree.

■ While this division of time into discreet segments may have a certain abstract appeal, it does not conform to our settled rules of criminal law. Unless expressly provided otherwise by the legislature, which is not the case here, a crime is composed of an act and an intent, which concur at a point in time. 22 C.J.S. *Criminal Law* § 29.

■ Larceny specifically requires an intent to steal at the very moment the property in question is taken into possession by the defendant. *Rainville* v. *Farm Bureau Mutual Automobile Insurance Co.*, 117 Vt. 37, 39, 83 A.2d 599, 600 (1951); *State* v. *Smith*, 2 Tyl. 272, 276 (1803). Since, as we

have noted, stealing requires an intent to keep the property permanently, it is this intent which must be present when the property is taken or the crime of larceny has not been committed, and whatever other offense may have been committed with the same property but a different intent, it was not larceny, nor any offense included within it. *State v. Reed, supra,* 127 Vt. at 538, 253 A.2d at 231; *State v. Levy, supra,* 113 Vt. at 461, 35 A.2d at 854.

Next the defendant claims error in the court's denial of his motion for acquittal based on a failure to prove intent to steal. His argument is that because the State introduced no direct evidence establishing his intent to permanently deprive the owner of his car, a larceny conviction cannot stand. He cites our old circumstantial evidence rule, *State v. Larose,* 138 Vt. 281, 285, 415 A.2d 210, 213 (1980) ; *State v. McMann,* 133 Vt. 288, 290, 336 A.2d 190, 192 (1975).

Even had the evidence in this case all been circumstantial, we have rejected the notion that it must have been so cogent as to exclude every reasonable hypothesis consistent with innocence, and have endorsed as our test, where sufficiency is in question, whether the evidence, viewed in the light most favorable to the State, is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt. *State v. Derouchie,* 140 Vt. 437, 440 A.2d 146 (1981).

Here, the evidence was more than circumstantial, even on the element of intent. The defendant's companion testified that neither he nor the defendant intended to return the car to its rightful owner when they took it. The question of what they did intend was properly a matter for the jury to decide, based on all the evidence before it.

*Judgment affirmed.*