# State of Vermont v. Jay P. Francis

[561 A.2d 392]

No. 87-458

Present: **Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.) and
Keyser, J. (Ret.), Specially Assigned**

Opinion Filed February 10, 1989

Motion for Reargument Denied March 28, 1989

*Jeffrey L. Amestoy, Attorney General, Elizabeth J. Grant* and
*Susan R. Harritt, Assistant Attorneys General,* and *Ilona Bes-
senyey, Law Clerk (On the Brief),* Montpelier, for Plaintiff-Ap-
pellee.

*Walter M. Morris, Jr., Defender General,* and *William A. Nel-
son, Appellate Defender,* Montpelier, for Defendant-Appellant.

**Morse, J.** Defendant, Jay P. Francis, was convicted of assault
and robbery, 13 V.S.A. § 608(a). This appeal raises issues about
the prosecutor's closing argument, the court's charge to the jury
on the burden of proof and the elements of the offense, and the
contents of the information. We affirm.

On an evening in January, 1987, Durward Benware was at the Trackside Tavern in Winooski, where he was introduced to Linda Joseph. After drinking there and at another night spot, they took a cab to the apartment of Candy Cochones, an acquaintance of Ms. Joseph's, in Burlington. In the cab, Ms. Joseph asked unsuccessfully if she could borrow money from Mr. Benware and, later, ripped a $5 bill trying to pull it away from him as he was paying the cab driver.

Both Ms. Cochones and defendant, her boyfriend, were at the apartment when Mr. Benware and Ms. Joseph arrived. After whispering to Ms. Cochones that she was going to "roll" Mr. Benware, Ms. Joseph made sexual advances toward him and managed to get his wallet. Although they struggled over the wallet, Mr. Benware was able to retrieve it intact.

After more drinks, Mr. Benware, Ms. Joseph and defendant left the apartment. Defendant testified that he wanted to get them out of the apartment and that he also wanted to buy some cigarettes; Mr. Benware claims he thought they were going to defendant's house. In any event, a short time later Mr. Benware was knocked to the ground and his wallet was taken. He testified that he was struck on the head from behind as they were walking through a school yard, and was told by defendant not to get up as his wallet was taken, after which defendant and Ms. Joseph ran off together.

Defendant's version of the incident was that Mr. Benware had become belligerent and jealous. Defendant testified that he was attacked by Mr. Benware, whereupon he shoved him to the ground and ran off, leaving Ms. Joseph with him in the school yard. He claimed that Ms. Joseph, who had told him that Mr. Benware had a lot of money and that she wanted to "rob the guy," must have taken the wallet.

After the assault, Mr. Benware went to a nearby house and called the police, whom he led to Ms. Cochones's apartment. His near-empty wallet was found in a nearby street. While questioning the defendant, who was found near the apartment, the police noticed a "red" knuckle and some specks of blood on his left hand. They also found some money in his pocket.

Ms. Joseph's version of the incident was not told by her to the jury because she had fled the jurisdiction prior to trial. She had, however, confessed to the police that she had assaulted and

robbed Mr. Benware, although they did not believe her at that time because she appeared to be "pretty drunk."

## I.

### Prosecutor's Final Argument

The defense, in its final argument, pointed out those areas in the evidence where reasonable doubt most logically fit. The defense theory centered on Linda Joseph and her behavior. The defense reasoned that Mr. Benware implicated defendant out of anger and embarrassment for allowing Ms. Joseph to take advantage of him.

In rebuttal argument, the State began:

> In a case like this it must be very difficult to come up with a theory of defense. Sometimes you argue the law, sometimes you argue the facts. Sometimes when you don't have the law, you don't have the facts, what you do is put up a big smoke screen. You try to confuse everything as much as you possibly can, and you hope that it works. That's what the defense in this case is. That's all the defense in this case is.

The prosecutor concluded that "Mr. Francis, that gentleman over there, lied to you." At this point, the defendant objected, moved to strike and asked for a curative instruction to the jury. The following then occurred:

> JUDGE PINELES: I'll sustain the objection. Mr. Andres, you can comment on the evidence.
>
> MR. ANDRES (prosecutor): That is evidence.
>
> JUDGE PINELES: Let the jury draw their own conclusions.

After the verdict, defendant moved for a new trial on the ground that the prosecutor had stated his opinion that the defendant was a liar.

Despite frequent admonition to prosecutors to refrain from overzealous argument to juries, the practice continues. See *State v. Ayers,* 148 Vt. 421, 425, 535 A.2d 330, 333 (1987), and cases cited, where the rule and its rationale are stated:

> In a long line of cases . . . , this Court has condemned statements by the prosecutor that indicate a personal belief that the defendant is guilty. There is a great risk that the jury will give special weight to this opinion because of the prestige of the prosecutor and the fact-finding facilities available to the office.

(Citations omitted.) See also *State* v. *Trombly,* 148 Vt. 293, 301, 532 A.2d 963, 968 (1987), *cert. denied,* 486 U.S. 1029, 108 S. Ct. 2009 (1988); *State* v. *Hemingway,* 148 Vt. 90, 91-92, 528 A.2d 746, 747-48 (1987), and cases cited.

The numerous cases on point, however, offer little guidance as to when questionable argument is sufficiently prejudicial to warrant a reversal. It was recognized early on that "there is little profit in comparing one case with another." *State* v. *Parker,* 104 Vt. 494, 500, 162 A. 696, 699 (1932). Whether a prosecutor's statements ought to result in a reversal depends on such factors as the blatancy of expression, see *State* v. *Ayers,* 148 Vt. at 426, 535 A.2d at 333-34, the impact on the theory of the defense, *id.,* persistence and frequency of expression, *id.,* opportunity and potential for the court to minimize prejudicial impact, *State* v. *Trombly,* 148 Vt. at 301, 532 A.2d at 968, the strength of evidence to support the logical relevance of the remarks, see *State* v. *Billado,* 141 Vt. 175, 183-84, 446 A.2d 778, 783 (1982), the overall strength of the State's case, *State* v. *Hamlin,* 146 Vt. 97, 106, 499 A.2d 45, 52 (1985), and the motivation for making the remarks, compare *id.* at 103, 499 A.2d at 50 ("spontaneous and inadvertent slip") with *State* v. *Lapham,* 135 Vt. 393, 407, 377 A.2d 249, 257 (1977) ("studied purpose").

Measured against these standards, the prosecutor's argument here fares poorly. The argument was blatant, blunt, pervasive and deliberate. According to the State, the defense did not show why reasonable doubt was present; it was a "smoke screen," a series of meaningless issues designed to confuse the jury because neither the facts nor the law helped the defendant. The crowning blow, calling the defendant a liar, was delivered in this context. While the judge ruled the later statement objectionable, he gave no curative instruction to the jury. Finally, the case was not overwhelming against the defendant.

The State claims the evidence supports an argument that defendant lied, and that is true. Defendant's testimony had major

weaknesses, such as the claim that he went out to buy cigarettes when the stores were closed and it was a long walk to the nearest store on a cold night. In addition, there was the fact of his injured hand.

The fault to be found in the prosecutor's claim of fabrication is not a lack of evidentiary footing. Whenever a defendant denies one or more of the elements of the crime, the evidence introduced by the State to satisfy the existence of the elements tends to support an argument that the defendant is not telling the truth. In the case at bar, there was evidence to support arguments that both the defendant and victim were lying. This case turned on credibility assessments. The jury would have acquitted defendant had it decided that there was a reasonable doubt as to the accuracy of Benware's account that defendant played a part in the robbery. On the other hand, to convict, the jury had to conclude that defendant was lying when he said he was acting in self-defense and ran from the scene of the robbery before it happened.

Since it was critical to make defendant out to be untruthful to win the case, it would be unfair for the prosecutor to lend weight to the argument by announcing a personal belief that the defendant was a liar. The prosecutor here was dangerously close to promoting his personal belief to persuade the jury. Labeling the defense summation as a "smoke screen" mischaracterized what we find to be reasonable and relevant arguments.

We are mindful that it is difficult forcefully to argue a point of view without conveying the impression that the advocate believes in what is being said. Otherwise argument loses its persuasive punch. We also do not wish to place artificial restrictions on the words chosen by the prosecutor in making closing arguments. Moreover, it is senseless to perpetrate a notion that prosecutors do not or should not have any opinion about the guilt or innocence of those they prosecute, and a jury will likely infer that a prosecutor believes a criminal defendant to be guilty even if the prosecutor never says so. That is why the cases cannot be neatly catergorized and must be viewed individually.

Whether the prosecutor has gone beyond the bounds of permissible argument, however, is a question that should be addressed to the discretion of the trial court. Absent plain error, we will review the claimed error only if the trial judge has had an opportunity to consider the question and take appropriate remedial action. Even then, our standard of review is deferential; we will not

substitute our judgment for that of the trial court. So long as there is a reasonable basis for the court's action, we will not overturn a discretionary ruling. *State* v. *Savo,* 141 Vt. 203, 208, 446 A.2d 786, 789 (1982). Only if the trial court has abused its descretion in permitting overzealous argument will we find cause for reversal.

Here defendant objected when the prosecutor called the defendant a liar; the court sustained the objection but did not give a curative instruction. Defendant did not object to the prosecutor's references to defendant's arguments as a "smoke screen." In the first instance, we do not find that the court abused its discretion for not doing more, because the statement was supported by inferences logically drawn from the testimony and any influence on the jury as being a statement of personal belief was borderline. In the second, we conclude that the error was not so egregious as to rise to the level of plain error. See *State* v. *Ayers,* 148 Vt. at 426, 535 A.2d at 333 (plain error requires "a showing that the error strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice."). As we noted in *Ayers,* plain error is rarely found in a prosecutor's argument to the jury "even where we have condemned the argument." *Id.* This case is no exception.

## II.

### *Reasonable Doubt*

The court's instruction on the meaning of reasonable doubt was as follows:

> Now, what is a reasonable doubt? That's the standard of proof that the State must show in this case. And it is a high standard of proof. First of all I want to tell you what it isn't before I tell you what it is.
>
> The State does not have to prove the Defendant's guilt beyond all conceivable or all possible doubt. In any human event there is always a possibility that the case may be other than what it appears. So it is not, the standard is not proof beyond all possible doubt or conceivable doubt, the standard is one of beyond all reasonable doubt.
>
> . . . [R]easonable doubt is a real doubt based on reason and common sense, which comes from a fair and rational consideration of the evidence or the lack of evidence in the

case. *And it is a doubt for which you can assign a reason.* It is not a vague, speculative, or imaginary doubt. Proof beyond a reasonable doubt must be proof which is *so convincing that reasonable people like yourselves would not hesitate to act on it in matters of personal importance in your own life.* You may not convict Mr. Francis on anything less than that, you may not convict him on suspicion, you may not convict him on conjecture or guesswork. Those considerations, no matter how strong, simply do not measure up to proof beyond a reasonable doubt.

What this means is after you have considered all of the evidence if you have a reasonable doubt as to any one of the elements of this offense, which I will explain in a moment, your obligation is to find Mr. Francis not guilty.

On the other hand if you determine after carefully evaluating the evidence and my instructions that the State has proven each of the elements beyond a reasonable doubt, it is your obligation to find Mr. Francis guilty.

(Emphasis added.)

The defense objected to the language, "a doubt for which you can assign a reason," as implying that a juror must have a specific articulable reason to have a reasonable doubt. On appeal, the defendant also raises an objection to the "matters of personal importance" language. This portion of the instruction was not objected to below.

Defining "reasonable doubt" is a hazardous undertaking because it seems the more said about it to the jury, the less protection that concept provides the accused. As the United States Supreme Court long ago stated: "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Miles* v. *United States,* 103 U.S. 304, 312 (1880); see also *Holland* v. *United States,* 348 U.S. 121, 140 (1954).

We believe both of the explanations of reasonable doubt challenged by defendant are potentially misleading. Consequently, they should be avoided in the future. Our disapproval of the language, however, is not so strong as to cause us to hold one or both to be reversible error.

## A. *Assigning reason to doubt*

We discourage the use of an instruction telling jurors they should assign a reason to doubt, because "assigning" may be interpreted by a juror to mean "articulating" the reason for doubt.

Most jurisdictions have upheld the use of language similar to the instruction in the present case. See, e.g., *Robinson* v. *Callahan,* 694 F.2d 6, 7 (1st Cir. 1982) (definition of "reasonable doubt" as "a doubt based on reason, a doubt for which you can give a reason" held constitutional); *United States* v. *Davis,* 328 F.2d 864, 867 (2d Cir. 1964) (definition of "reasonable doubt" as one for which "you can give a reason" "seems to put the point to jurors rather more intelligibly than the usual instruction"); *Barber* v. *Scully,* 557 F. Supp. 1292, 1296 (S.D.N.Y. 1983), *aff'd,* 731 F.2d 1073 (2d Cir. 1984); *State* v. *Derrico,* 181 Conn. 151, 170-71, 434 A.2d 356, 367-68, *cert. denied,* 449 U.S. 1064 (1980); *People* v. *Quinones,* 123 A.D.2d 793, 793, 507 N.Y.S.2d 417, 418 (1986).

Lawyers are adept at assigning reasons for doubts raised by evidence or the lack of it. It is one thing for counsel to argue reasons why there is a reasonable doubt about a defendant's guilt; it is quite another to require a juror to assign a reason to conclude there is a reasonable doubt. A juror may harbor a reasonable doubt and not be able to articulate it. We do not require jurors to be accomplished in ratiocination and debate. It does not follow that a juror who doubts the defendant's guilt, but cannot assign a reason for the doubt, has an unreasonable doubt. The court's instruction tends to discourage and dissuade less erudite jurors who cannot articulate an explanation for an acquittal. See *Dunn v. Perrin,* 570 F.2d 21, 23 (1st Cir.), *cert. denied,* 437 U.S. 910 (1978) (formulation "doubt . . . for . . . which a reasonable person can give or suggest a good and sufficient reason" held improper, although not by itself cause for reversal); *State* v. *Boswell,* 294 S.E.2d 287, 295-96 (W. Va. 1982) (instruction that reasonable doubt is one for which juror "should be able to give a good and substantial reason" held reversible error).

## B. *Matters of importance*

We also believe it trivializes the proof-beyond-a-reasonable-doubt standard to compare it to decisions of personal importance in a juror's life. Making a decision about the guilt of an accused is dissimilar to deciding important personal matters. The latter

often involves the balancing of advantages and disadvantages and the decision is reached upon a mere tip of the balance. See *Commonwealth* v. *Rembiszewski*, 391 Mass. 123, 130-31, 461 N.E.2d 201, 206 (1984). If people really did make important personal decisions only when convinced beyond a reasonable doubt as to their correctness, human activity would evidence far more inertia than it does. As stated in *Scurry* v. *United States*, 347 F.2d 468, 470 (D.C. Cir. 1965), *cert. denied*, 389 U.S. 883 (1967):

> A prudent person called upon to act in an important business or family matter would certainly gravely weigh the often neatly balanced considerations and risks tending in both directions. But, in making and acting on a judgment after so doing, such a person would not necessarily be convinced beyond a reasonable doubt that he had made the right judgment. Human experience, unfortunately, is to the contrary.

Again, however, the specific language used by the trial court in this case has been approved on numerous occasions. See, e.g., *United States* v. *Colon*, 835 F.2d 27, 31 (2d Cir. 1987), *cert. denied*, 485 U.S. 980, 108 S. Ct. 1279 (1988) (expressing "preference for the 'hesitate to act' language" in jury instructions comparing the decision to convict with decisions concerning the most important personal matters); *United States* v. *McBride*, 786 F.2d 45, 52 (2d Cir. 1986); *United States* v. *Ross*, 719 F.2d 615, 621 (2d Cir. 1983).

In light of these precedents, we do no more here than express our view that the better practice for the trial courts is to avoid drawing analogies between the degree of certainty required to convict a criminal defendant and the degree of certainty underlying decisions in matters of personal importance.

## III.

### *The Elements of Assault and Robbery*

Defendant complains about the court's charge to the jury on the elements of assault and robbery in two respects. He maintains, first, that the term "assault" was erroneously defined and, second, that the court failed to instruct that the intent to permanently deprive the victim of his property was an essential element of the offense.

## A.

### *Assault*

■ The court instructed the jury as follows:

[A] person is guilty of assault if he purposely, knowingly, and/or reckessly caused bodily injury to another person. Bodily injury means . . . physical pain, illness, or any impairment of physical condition.

The instruction borrowed definitions of simple assault and bodily injury from 13 V.S.A. §§ 1023 (a)(1) and 1021(1).

Defendant argues that the "assault" contemplated by § 608(a) is the common law definition, not the definition of the Model Penal Code, from which §§ 1023 and 1021 are derived. See Model Penal Code § 211.1 (1980). Under the common law,

an assault is a demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present. Although physical contact is not an essential element, violence, threatened or offered, is.

*State* v. *Murphy,* 128 Vt. 288, 291, 262 A.2d 456, 459 (1970) (citation omitted).

There is no doubt that the common-law definition of assault differs in significant respects from the instruction given the jury. Of particular significance, the instruction would permit conviction upon a showing of reckless infliction of injury, while intent had to be proved at common law.[1]

This Court has previously stated that the common law "controls unless modified by statute or case law." *State* v. *LeBlanc,* 149 Vt. 141, 142, 540 A.2d 1037, 1038 (1987). In *Langle* v. *Kurkul,* 146 Vt. 513, 516, 510 A.2d 1301, 1303 (1986), we held:

---

[1] The court did not charge the full simple assault statute, parts of which do require intent. Thus § 1023(a) provides:

A person is guilty of simple assault if he:

(1) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or

(2) negligently causes bodily injury to another with a deadly weapon; or

(3) attempts by physical menace to put another in fear of imminent serious bodily injury.

Since defendant was hit on the head and not just put in fear, and there was no evidence of a deadly weapon, the trial judge properly excluded clauses (2) and (3) and the "attempt" portion of clause (1).

> The common law is changed by statute only if the statute overturns the common law in clear and unambiguous language, or if the statute is clearly inconsistent with the common law, or the statute attempts to cover the entire subject matter.

The conditions for finding a change in the common law are present here. The legislative history of § 608 makes clear that the provision was to be understood in pari materia with the assault statutes. Section 608 derives from 1973, House Bill No. 118, § 14,[2] which was drafted for the House Judiciary Committee by the Vermont State's Attorneys Association. At a hearing on the bill before the House Judiciary Committee on January 10, 1973, then State's Attorney M. Jerome Diamond emphasized that the proposed statute was intended to be construed according to the definitions of the assault statutes passed by the Legislature the previous year.[3] We hold therefore that the assault component of § 608 is properly understood to incorporate the elements of assault as defined in §§ 1023 and 1021. These sections are inconsistent with the common law. There is no error in this portion of the jury instruction.

## B.

### Intent

The trial court instructed the jury that the State was required to prove "the specific intent of committing an asault and robbery." Beyond this question-begging formulation, the court did not explain to the jury what acts and consequences the defendant must have intended. Defendant claims that the trial court erred in not charging as an element of assault and robbery the specific

---

[2] That section was later omitted from H-118 and was given its own bill number, H-212. It was enacted into law on April 14, 1973. 1973, No. 73.

[3] Thus:

> The reason we use the wording of serious bodily injury or just bodily injury, its because if you look to the assault section that you passed last year, you gave definitions for those words. . . . So we thought if we used the same terminology that it would help the courts in giving a definition of what we meant.

*Hearing on H-118 Before the House Judiciary Committee*, Jan. 10, 1973, microfilm no. 111-A, at 51-52 (statement of M. Jerome Diamond). More explicitly, "[b]odily injury is defined as 'physical pain, illness, or any impairment of physical condition.'" *Id.* at 60.

intent to steal, that is, the "intent to take and keep property of another wrongfully." *State* v. *Hanson,* 141 Vt. 228, 232, 446 A.2d 372, 374 (1982).

Defendant was charged with violating 13 V.S.A. § 608(a), which provides:

> A person who assaults another and robs, steals, or takes from his person or in his presence money or other property which may be the subject of larceny shall be imprisoned for not more than ten years.

On its face the statute does not list intent as an element of the offense. We have recently noted with approval, however, the United States Supreme Court's statement that "guilty intent may be implied where not expressly stated in a statute." *State* v. *Audette,* 149 Vt. 218, 221, 543 A.2d 1315, 1316 (1988) (relying on *Morissette* v. *United States,* 342 U.S. 246, 263 (1952)). "When the Legislature is silent as to the mens rea required for a particular offense, this Court will not simply assume that the statute creates a strict liability offense, but will try to determine the intent of the Legislature." *Audette,* 149 Vt. at 221, 543 A.2d at 1317.

Section 608 was modeled after the Massachusetts robbery statutes. *Hearing on H-118, supra,* note 3, at 51.[4] The Supreme Judicial Court of Massachusetts has held:

> Robbery includes all the elements of larceny and in addition requires that force and violence be used against the victim or that the victim be put in fear.

*Commonwealth* v. *Johnson,* 379 Mass. 177, 181, 396 N.E.2d 974, 977 (1979). Futhermore,

> Larceny is the unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently.

*Id.* There appears no design in the legislative history of § 608 to depart from the construction given the Massachusetts provision by that state's courts. We therefore hold that the same specific

---

[4] Mass. Gen. Laws Ann. ch. 265, § 19(b) (West Supp. 1988) provides:
> Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished . . . .

intent element should be read into Vermont's assault and robbery statute.[5] This holding is consistent with the views of leading commentators and the great majority of jurisdictions. See 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.11(b) (1986).

The jury instruction in this case failed properly to explain the intent element of the crime charged. The defendant, however, failed to object to the jury charge below. The error does not rise to the level of plain error. Among the several questions before the jury in this case, whether the person who took Mr. Benware's money had the intent to deprive him of it permanently was not one of the close or difficult ones. The error in the instruction therefore did not effect a miscarriage of justice. See *State* v. *Ayers,* 148 Vt. at 426, 535 A.2d at 333.

## IV.

### *The information*

Defendant was charged as follows:

> That Jay P. Francis . . . [w]as then and there a person who assaulted another, to wit: Durward Dale Benware, and took from his person property which may be the subject of larceny, to wit: money, in violation of Title 13 V.S.A. § 608(a).

Defendant claims on appeal, but not below, that the information is defective in that it does not state that he committed the offense intentionally.

Generally, a crime defined by statute is sufficiently charged in the words of the statute. *State* v. *McGrail,* 134 Vt. 91, 92, 353 A.2d 342, 343 (1976). Here the information reasonably indicated the exact offense charged. See *State* v. *Phillips,* 142 Vt. 283, 288, 455 A.2d 325, 328 (1982). We do not find plain error in the failure of the charge to be more explicit.

> Consistent with the purpose of V.R.Cr.P. 7(b), where the relevant statute does not specify a knowledge or intent ele-

---

[5] We note that § 608 reads "robs, steals, *or takes* . . . property" (emphasis added), suggesting that intent to steal may not be required, since one can intend to take without intending to steal. We decline to read the statute in this fashion. The Massachusetts provisions also use the disjunctive "or," see Mass. Gen. Laws Ann. ch. 265, §§ 17, 19 (West 1970 & Supp. 1988), but that state's courts did not ascribe such significance to the word as to overcome the presumption that the common-law meaning of the crime should prevail.

ment, we believe that the omission [from the information] of such an implied element is not fatal, especially where defendant has failed to object below.

*State* v. *Roy,* 151 Vt. 17, 29, 557 A.2d 884, 891 (1989).

*Affirmed.*

## On Motion For Reargument

Defendant urges the Court to reconsider its holding in Part IV of the opinion that no plain error can be found in the State's information since the information reasonably indicated the exact offense charged. Defendant argues to the contrary that the information must be deemed fatally defective under *State* v. *Kreth,* 150 Vt. 406, 407-08, 553 A.2d 554, 555 (1988), and *State* v. *Bradley,* 145 Vt. 492, 494-95, 494 A.2d 129. 131-32 (1985), for failing to allege express statutory elements of the offense charged.

*State* v. *Francis* holds that the assault and robbery statute, 13 V.S.A. § 608, incorporates the elements of assault as defined in 13 V.S.A. §§ 1021, 1023. 151 Vt. at 307-08, 561 A.2d at 398. This holding does not imply, as defendant argues, that the elements of assault are therefore express statutory elements of 13 V.S.A. § 608. Indeed, our decision required a searching inquiry into the origin of the statute, which would not have been necessary had the elements been express. Since the omitted elements are not explicit, *Kreth* and *Bradley* are inapplicable. See *State* v. *Roy,* 151 Vt. at 29, 557 A.2d at 891.

Moreover, *Kreth* and *Bradley* involved failures to allege all the necessary elements under the statutes charged in those cases. The informations thus failed properly to charge an offense. Here, the claim is not that no offense was charged, but that the information was insufficiently specific to inform defendant precisely which type of assault was involved in the alleged assault and robbery. Both defense and jury, however, were well aware of which type of assault was involved; no one claimed (or probably even contemplated) that the alleged crime was one of negligence or recklessness, or that only an attempt was involved. The victim alleged he was hit on the head from behind and his wallet was stolen. That is unambiguous.

We reiterate that our holding is only that there was no plain error in any failure of the information to be more explicit. De-

fendant did not object before or at trial to the sufficiency of the information. Defendant was adequately informed of the charge against him, was in no way prejudiced by any lack of specificity, and cannot now obtain a reversal of his conviction based upon the alleged defect.

*Defendant's motion for reargument is denied.*