2004 VT 18

## Ronald L. Pepin v. Allstate Insurance Company

[848 A.2d 269]

No. 03-037

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed February 27, 2004

*Stephen S. Blodgett* and *Jason J. Sawyer* of *Blodgett, Watts & Volk, P.C.*, Burlington, for Plaintiff-Appellant.

*Patricia S. Orr* and *Cassandra S. Edson* of *Unsworth Powell Barra Orr & Bredice, PLC*, Essex Junction, for Defendant-Appellee.

¶ 1. **Allen, C.J. (Ret.), Specially Assigned.** Plaintiff Ronald L. Pepin appeals from the trial court's summary judgment dismissal of his complaint against defendant Allstate Insurance Company. Plaintiff argues that the trial court erred in dismissing his complaint because he established a prima facie case that the removal of personal property from his home by a court-appointed master constituted "theft" covered by his homeowner's insurance policy. We affirm.

¶ 2. In March 1998, pursuant to divorce proceedings, plaintiff and his wife were ordered to sell two homes that they owned in South Burlington. Given the animosity between the parties, the court appointed a master to carry out the responsibilities set out in its order. The court stated that, in the event that the parties were "unable to agree upon the process for sale of the dwellings, the real estate agent, etc., the Master shall make all decisions necessary to implement" its order.

¶ 3. In October 1999, the court appointed the master as plaintiff's representative and agent because of plaintiff's limited availability to sign documents necessary to accept offers and complete closings on the properties in a timely manner. Specifically, the court authorized the master to

> act in the name, place and stead of [plaintiff], to sign his name and in his name execute, acknowledge and deliver any and all instruments, documents, or other writings, and to do, perform and otherwise transact any and all transactions on his behalf, which are necessary or advisable to accomplish the sale or transfer of the land and buildings, and personal property therein if any, located [in South Burlington], so that any purchaser shall receive full title in fee simple free and clear of all liens and encumbrances.

¶ 4. In connection with anticipated closings in October and November 1999, the master repeatedly asked plaintiff to remove his personal property from one of the homes. Plaintiff removed some of his property, but he did not remove all of it. The closings did not occur. In anticipation of a December 17, 1999 closing, the master asked plaintiff to remove his remaining belongings by December 8. On December 14, after plaintiff failed to comply with her request, the master hired a company to remove and dispose of plaintiff's remaining property. Plaintiff discovered that his property was missing and filed a police report on December 15. In the report, plaintiff stated his belief that the realtor had removed personal

property worth $2000 from his basement without his permission. Plaintiff indicated that he would contact the realtor to ascertain the status of his belongings and contact police if any other information was needed.

¶ 5. The house was eventually sold in May 2000. In a letter to the master, plaintiff's attorney indicated that plaintiff was filing a claim for lost property with his insurance carrier, and needed the master to substantiate that property had been removed from his home. Plaintiff's attorney also informed the master that

> [b]ecause there are a number of claims and offsets for payment of expenses (including [plaintiff's] claim that his property should have been retained rather than dumped), I will be requesting the Court to hold the net proceeds from the sale of the properties, that is after all expenses of closing are paid, for a final accounting.

Notwithstanding the concerns expressed in this letter, plaintiff agreed to the master's final distribution of funds from the sale of the marital properties, including the allocation of expenses. The master's report did not account for the personal property that had been removed from plaintiff's home, and plaintiff raised no issue with respect to this property. The family court accepted the recommendation in the master's report, and plaintiff did not appeal this decision.

¶ 6. In July 2000, plaintiff submitted a claim to defendant Allstate Insurance Company seeking $62,801.88 in reimbursement for the property removed by the master. Plaintiff's homeowner's policy covered his property against "[t]heft, or attempted theft, including disappearance of property from a known place when it is likely that a theft had occurred." Defendant denied coverage, explaining that plaintiff's loss could not be considered a theft loss because the removal of the property had been completed under a court order.

¶ 7. Plaintiff then filed a declaratory judgment action against defendant, seeking insurance coverage, injunctive relief, and damages. The trial court granted summary judgment for defendant after concluding that there were no material facts at issue and plaintiff had failed to make out a prima facie case that his belongings were the object of theft. The court found that "theft" meant "stolen," which the law defines as "the unlicensed apportation [sic] of personal property with the intent to permanently deprive the owner thereof." The court concluded that plaintiff failed to show that his property had been the object of "theft" because the master had been authorized to arrange for the removal of the property, and plaintiff was estopped from challenging her authority because he had

not appealed the family court decision. The court explained that "[w]ithout some showing, both factual and legal, that the Master was without authority to remove the property from the building, and then had a duty to preserve what had been removed, we cannot conclude that this property was the object of theft, by the Master or tradesmen in her employ." The court therefore granted summary judgment for defendant. Plaintiff appealed.

¶ 8. We review a grant of summary judgment using the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). Summary judgment is appropriate when, taking all allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c). "Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case." *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 18, 665 A.2d 580, 583 (1995). If the moving party satisfies this requirement, "[t]he burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Id.*

¶ 9. Plaintiff first asserts that summary judgment was inappropriate because the term "theft" should be broadly construed to include the master's removal and disposal of his property without his permission. More specifically, he argues that: (1) a question of fact remains whether the master acted outside of her delegated authority in removing and disposing of his property; (2) the term "theft" is ambiguous, and any question regarding the breadth of the term should be resolved against defendant; (3) he did not need to prove a theft per se under the terms of the policy, but only the likelihood that a theft occurred, and there are outstanding factual questions surrounding the resolution of this question; and (4) the law supports a broad interpretation of the term "theft."

■ ¶ 10. We must construe an insurance policy "according to its terms and the evident intent of the parties as expressed in the policy language." *City of Burlington v. Nat'l Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994). In this case, plaintiff's homeowner's policy provides coverage for losses sustained by "[t]heft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred." The term "theft" is not defined, and we therefore presume the parties relied on the word's ordinary meaning. *Landry v. Dairyland Ins. Co.*, 166 Vt. 634, 635, 701 A.2d 1035, 1036 (1997) (mem.); *City of Burlington*, 163 Vt. at 127-28, 655 A.2d at 721 (we give disputed terms "their plain, ordinary and popular meaning"). As discussed below,

we conclude that to be entitled to coverage under the "theft" provision in his homeowner's insurance policy, plaintiff needed to show that his property was taken by the master or her agents with the intent to steal. Plaintiff has not presented any evidence that would justify such a conclusion, and, therefore, summary judgment was properly granted for defendant.

¶ 11. First, our case law does not support plaintiff's suggested interpretation of the term theft. We have previously construed the term theft in the context of an insurance policy to require a showing that the taking of property was accompanied by an intent to steal. See *Rainville v. Farm Bureau Mut. Auto. Ins. Co.*, 117 Vt. 37, 39, 83 A.2d 599, 600 (1951); *Allen v. Berkshire Mut. Fire Ins. Co.*, 105 Vt. 471, 476-77, 168 A. 698, 700 (1933).

¶ 12. In *Rainville*, plaintiff sought coverage under the "theft" provision in his automobile insurance policy after his son took his car without permission and wrecked it. We concluded that plaintiff was not entitled to coverage because he had not shown that his son took the car with the intent to steal it, nor had he demonstrated other facts that would show that a "theft" had occurred. *Rainville*, 117 Vt. at 40, 83 A.2d at 600. We stated, without deciding, that if plaintiff could show that his son had taken the car

> with a view only to a temporary user, intending, however, to keep it for an unreasonable time; or intending to use it in a reckless, wanton or injurious manner; or intending to leave it to mere chance whether the owner ever recovered it or not, such taking would be, both in common sense and in law, a theft within the meaning of [plaintiff's insurance] policy.

*Id.* at 39-40, 83 A.2d at 600. Absent evidence that any of these alternatives existed, or that the taking had been with the intent to steal, we concluded that "[t]he facts as disclosed do not add up to a theft, either in law or in ordinary speech." *Id.* at 40, 83 A.2d at 600.

¶ 13. In reaching our conclusion in *Rainville*, we recognized that a majority of states require a taking with the intent to steal to recover under a theft provision in an automobile insurance policy. We rejected the argument that the term theft, synonymous with larceny, was broad enough to include use without the owner's consent, even in the absence of an intent to steal. *Id.* at 38, 83 A.2d at 599. We explained that under Vermont law the crime originally called theft, now called larceny, "has always required a taking *animo furandi*, that is to say with the intent to steal." *Id.* at 39, 83 A.2d at 600.

¶ 14. In *Allen*, we concluded that the term "theft" within an automobile insurance policy included what, at law, would be considered embezzlement. *Allen*, 105 Vt. at 477, 168 A. at 700. In that case, plaintiff sought coverage after he let a prospective purchaser take his car on a trial basis and the individual absconded with the vehicle. The insurance company argued that "theft" meant larceny, and there had been no larceny because the bailee's possession had been lawfully obtained and his felonious intent had been formed after he received the vehicle. We rejected this argument, explaining that "theft" was a wider term than "larceny," and it included other forms of wrongful deprivation of property. *Id.* We explained that " 'larceny by a bailee or fiduciary would be theft within the policy, though at common law it would be classified under the heading of embezzlement.' " *Id.* (quoting *Van Vechten v. American Eagle Fire Ins. Co.*, 146 N.E. 432, 433 (N.Y. 1925)). We found it clear from the findings that the taking of plaintiff's automobile had been *animo furandi*, and therefore there had been a theft within the meaning of the policy. *Id.*

¶ 15. Plaintiff relies on *Katze v. Randolph & Scott Mut. Fire Ins. Co.*, 330 N.W.2d 232 (Wis. Ct. App. 1983), *rev'd on other grounds*, 341 N.W.2d 689 (Wis. 1984), to support his assertion that the term theft should be broadly construed. In *Katze*, the court concluded that plaintiff had suffered a loss due to "theft" within the meaning of an insurance policy when he received a worthless check as payment for cattle. The court found the term theft, which was defined in the policy as "any act of stealing," included theft by fraud. *Id.* at 236. The court explained that the buyer's successful scheme to defraud plaintiff of his property fit within the general meaning of the term "theft." Importantly, in *Katze*, it was undisputed that at all material times the purchaser intended to appropriate plaintiff's cattle without paying for them. *Id.*

¶ 16. These cases do not support plaintiff's assertion that the term "theft" should be construed to cover the acts at issue here. In all of these cases, the court considered whether there had been an intent to steal in reaching its conclusion. Plaintiff's reliance on language in *Rainville* where we suggested alternative ways in which a plaintiff could show theft is equally unavailing. As dicta, this passage is not binding authority. In any event, the suggested alternatives presume an initial wrongful taking with the intent to permanently deprive the owner of his property, which is absent in this case.

¶ 17. Our construction of the term theft is consistent with dictionary definitions of the term and with the legal definition of larceny in Vermont. See *Abraham v. Ins. Co. of N. Am.*, 117 Vt. 75, 80, 84 A.2d 670, 673 (1951)

("When a pivotal word is not defined either in the policy or the application it is permissible for the court to take judicial notice of its meaning as given in standard works, such as dictionaries."). Webster's New International Dictionary defines theft as "the act of stealing; *specif*: the felonious taking and removing of personal property with intent to deprive the rightful owner of it." Webster's New International Dictionary 2369 (3d ed. 2002). Black's Law Dictionary defines theft as "[t]he felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny." Black's Law Dictionary 1486 (7th ed. 1999).

¶ 18. In a similar vein, the crime of larceny in Vermont, previously called theft, "specifically requires an intent to steal at the very moment the property in question is taken into possession by the defendant." *State v. Hanson*, 141 Vt. 228, 232, 446 A.2d 372, 374 (1982). We have defined "stealing" as "the taking and removal, by trespass, of personal property, which the trespasser knows to belong to another, with the felonious intent to deprive him of his ownership therein." *Id.* at 231, 446 A.2d at 374 (citations omitted). "This larcenous intent," we explained, "has in turn been further defined in Vermont as an intent to take and keep property of another wrongfully so that the trespasser may appropriate it for his own purposes." *Id.* at 231-32, 446 A.2d at 374 (internal citation omitted).

■ ¶ 19. Based on the discussion above, we conclude that the term "theft" in plaintiff's homeowner's policy requires a showing that his personal property was taken by another with the intent to steal. Plaintiff cannot establish that the master acted with the intent to steal his property because he failed to contest her authority to remove his personal property in the family court proceeding. The doctrine of collateral estoppel precludes plaintiff from challenging her authority here. See *Berlin Convalescent Ctr., Inc. v. Stoneman*, 159 Vt. 53, 56, 615 A.2d 141, 144 (1992) (The doctrine of collateral estoppel "bars the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action.") (internal quotation marks and citation omitted).

¶ 20. As previously noted, plaintiff agreed to the master's final distribution of funds from the sale of his home, which did not account for the personal property that had been removed. The family court approved the master's final report, and plaintiff did not appeal this decision. Thus, the undisputed facts show that when the master removed plaintiff's belongings she acted under the authority of a court order, unchallenged by plaintiff in the family court, to complete the sale of the home. Plaintiff failed to present any evidence that would support a finding that his

belongings were the subject of "theft," and summary judgment was properly granted for defendant.

¶ 21. Based on our conclusion above, we need not address plaintiff's second argument that the court erred in concluding that the master did not have a duty to protect or preserve his property as a bailee. Even assuming that the master had a duty to preserve plaintiff's belongings, her actions here, unaccompanied by an intent to steal, would not constitute theft within the meaning of plaintiff's homeowner's insurance policy.

*Affirmed.*