■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD CUBINO, Appellant. [635 NYS2d 625] —Judgment, Supreme Court, New York County (Rena Uviller, J.), rendered June 17, 1993, convicting defendant, after a jury trial, of burglary in the second degree and criminal trespass in the second degree, and sentencing him, as a second felony offender, to concurrent prison terms of 5 to 10 years and 1 year, respectively, affirmed.

It was not error for the court to instruct the jury that in deciding a case, "[p]roof beyond a reasonable doubt * * * is the quality and the amount of proof that you would require before you made an important decision concerning your own lives." This statement, describing the jurors' reasoning process in assessing the standard of proof beyond a reasonable doubt, is indistinguishable from the language we approved in *People v Serrano* (170 AD2d 269, *lv denied* 77 NY2d 1000) and *People v Thomas* (210 AD2d 10, *lv denied* 85 NY2d 867), and was accompanied by other instructions that, read as a whole, conveyed the proper standard. Concur—Kupferman and Asch, JJ. Mazzarelli, J., concurs in a memorandum; Murphy, P. J., and Ellerin, J., dissent in a memorandum by Murphy, P. J., all as follows:

Mazzarelli, J. (concurring).

In its final charge to the jury, the trial court attempted to give shape to the amorphous concept of reasonable doubt in terms that would aid the jury in its task of reaching a verdict based on the evidence or lack of evidence. As part of a larger explanation of what constitutes a reasonable doubt and the reasoning process to be used by the jury, the trial court used the particular language set forth in the majority memorandum. This language is very similar to, but is not exactly the same as, that approved in *People v Serrano* (170 AD2d 269, 269-270, *lv denied* 77 NY2d 1000 ["the jury should apply the same reasoning 'as you would and do apply to weighty and important matters involving your personal and business affairs' "]) and *People v Thomas* (210 AD2d 10, *lv denied* 85 NY2d 867 [jurors properly instructed to apply " 'the same power of reasoning and power of decision that you would apply and do apply to weighty and important matters relating to your personal and business affairs' "]).

Standing alone and out of context, the objected-to phrase can be read, as the dissent has read it, as diluting the quantum of proof (or in the words of the trial court, "the amount of proof") required for a conviction rather than as describing the reasoning process to be used by the jury in determining whether the prosecution has in fact met its burden of proof. However, in the preceding paragraph the trial court, in describing the reasoning process the jurors should use, stated to the jurors, "You must use the same powers of reasoning and power of decision making which I know that you apply to any important matter in your own lives." This is the same language approved in *Thomas*. In the sentence immediately preceding the one objected to, the trial court referred to common sense as a "tool for deciding a case." Then, in a reference back to the preceding paragraph which contained the approved *Thomas* language, the trial court made the objected-to statement.

When viewed in context, as it must be (*People v Coleman*, 70 NY2d 817, 819), the objected-to language was describing the reasoning process to be used by the jury, and described it in a manner previously approved by *Thomas* and *Serrano*. Moreover, as the majority memorandum properly notes, elsewhere in its charge, the trial court properly defined the quantum of proof in terms previously approved by this Court. Thus, it cannot be said that the objected-to language, when read in context of the entire charge, deprived defendant of a fair trial and defendant's conviction is therefore properly affirmed.

Murphy, P. J. (dissenting).

In her charge to the jury, the trial court explained the concept of reasonable doubt in the following way: "Proof beyond a reasonable doubt, as I say, is the quality and the amount of proof that you would require before you made an important decision concerning your own lives". At the conclusion of the charge, defense counsel objected to the cited portion of the charge arguing that it impermissibly diminished the People's burden, effectively rendering it indistinguishable from the preponderance of the evidence standard properly applied only in a non-criminal context. The court noted the exception but issued no curative instruction.

Surely there is no more fundamental safeguard against wrongful conviction than the Due Process Clause requirement that a criminal defendant's guilt be established "beyond a reasonable doubt." (*In re Winship*, 397 US 358, 363.) Petit juries throughout the country in both Federal and State courts must, accordingly, be instructed that a criminal defendant may not be convicted unless his or her guilt is proved beyond a reason-

able doubt (*see, e.g.*, CPL 300.10 [2]). Notwithstanding the frequency with which the concept is invoked, however, the notion of reasonable doubt and the quality of an assuredness from which it is altogether excluded, is not at all easy to describe. This must certainly be due in large measure to the circumstance that, contrary to the trial court's suggestion, there are very few decisions taken in daily life—even those which we consider "important"—in which the elimination of all reasonable doubt is made a condition of judgment. While we would, of course, like to be sure that our choice of a doctor, or a school for our children, or a car, or a retirement investment is the best that can be made, I should think it obvious that decisions such as these, although undeniably "important", are almost never premised, much less conditioned, upon the absence of all reasonable doubt; judgment in these vital areas is virtually always accompanied by some entirely rational qualms. There is, in fact, no correlation between rationally unassailable assuredness and importance when it comes to decision making in our daily lives or, for that matter, when it comes to decision making in the courtroom when criminal liability is not at issue. Indeed, as defendant's counsel argued in this case, unless the decision of a juror judging in a civil controversy, where only a preponderance of the evidence is necessary to assign liability, is to be deemed "unimportant", a notion we would surely reject, it is clear that, however "important" a decision may be, it will not by reason of its importance necessarily be decided without some rationally based misgivings. By contrast, it is the hallmark of criminal adjudication that such misgivings must be soundly put to rest before a juror casts a vote for conviction. The decision a juror is called upon to make as to the fate of a criminal defendant is thus unlike most of our other important decisions; while there are numerous other respects in which it might be considered sui generis, relevant here is the observation that it is a decision which, if made in favor of conviction, must rest upon a foundation of evidentiary certainty virtually unequaled in any other area of judicial or non-judicial judgment.

The fallacy of equating the degree of certainty we demand in matters of personal importance, with that constitutionally required in support of a juror's vote to convict one accused of crime, has been pointedly noted in numerous jurisdictions, State and Federal (*see, e.g.*, *Scurry v United States*, 347 F2d 468, 470, *cert denied sub nom. Scurry v Sard*, 389 US 883 ["Being convinced beyond a reasonable doubt cannot be equated with being 'willing to act * * * in the more weighty and important matters in your own affairs' "]; *Commonwealth v*

*Rembiszewski*, 391 Mass 123, 131, 461 NE2d 201, 207 ["Equating the proof that the jurors might have wanted in making decisions with respect to their personal affairs with the degree of certitude necessary to convict the defendant tended to reduce the standard of proof from the criminal standard of proof beyond a reasonable doubt to the standard in civil cases, proof by a fair preponderance of the evidence."]; *State v Francis*, 151 Vt 296, 303-304, 561 A2d 392, 396 ["We also believe it trivializes the proof-beyond-a-reasonable-doubt standard to compare it to decisions of personal importance in a juror's life. Making a decision about the guilt of an accused is dissimilar to deciding important personal matters. The latter often involves the balancing of advantages and disadvantages and the decision is reached upon a mere tip of the balance. * * * If people really did make important personal decisions only when convinced beyond a reasonable doubt as to their correctness, human activity would evidence far more inertia than it does."]). It is, however, contended that the equation in question, although obviously inaccurate and roundly condemned as violative of a universally mandated constitutional standard, has nonetheless found acceptance in New York case law. In support of this dubious proposition, the People cite to *People v Serrano* (170 AD2d 269, *lv denied* 77 NY2d 1000), where this Court in a very brief memorandum found unexceptionable a charge in which the jury was instructed that it "should apply the same reasoning 'as you would and do apply to weighty and important matters involving your personal and business affairs' " *(supra,* at 269-270). As should be evident, however, the *Serrano* charge differs from the charge presently at issue in at least one important respect. While the *Serrano* charge merely attempted to describe the reasoning process appropriately utilized by the jury as it discharged its deliberative obligation, the presently disputed charge went further, not only characterizing the process by which the verdict was to be reached but additionally the quantum of proof necessary to convict. Upon this latter subject, the court, as noted, charged, "Proof beyond a reasonable doubt is * * * *the amount of proof* you would require before you made an important decision concerning your own lives" (emphasis added). While the court's evident wish to make the concept of proof beyond a reasonable doubt more accessible to the jury cannot be faulted, the explanation provided was inaccurate and misleading in a way that the charge in *Serrano* was not and which *Serrano* accordingly cannot be read to countenance. Undeniably, it was but a small step linguistically, if not conceptually, from the *Serrano* charge to the one here at issue, but surely that observation does not amount to an argu-

ment for the charge's validity. Error is error, whether approached by large steps or barely perceptible increments.

There is finally the contention that, even if the charge did mischaracterize the People's burden, the erroneous language, viewed as it should be, in the context of the charge as a whole (*see, People v Coleman*, 70 NY2d 817), was harmless. The complained-of language, however, heralded as it was by the sentence "I cannot emphasize enough, there is no better tool for deciding a case than your common sense", occupied a central and expressly emphasized portion of the court's otherwise brief reasonable doubt charge in which the court purported to synthesize and encapsulate what had been said before in a more diffuse way. To the extent, then, that the majority relies upon the court's earlier discussion of reasonable doubt to diminish the import of the subsequent, contested portion of the charge, it would appear that its reliance is misplaced. This is because the latter disputed part of the charge purports to recapitulate in a significantly more definitive way the preceding discussion of reasonable doubt. Thus, even if the charge had been unobjectionable until the court instructed the jury that "Proof beyond a reasonable doubt, *as I say*, is the quality *and the amount of proof you would require before you made an important decision concerning your own lives*" (emphasis added), this erroneous instruction could not have been perceived by the jury except as the court's ultimate and superseding statement as to the degree of assuredness which must attend a juror's vote to convict. It is not then by viewing the aforecited language in isolation that I conclude that the charge as a whole was defective. Indeed, it is precisely when the disputed language is viewed in context that the full extent of the defect is most apparent. Contrary to the view which must underlie the majority's method of balancing isolated portions of the charge against one another and concluding for no apparent reason that the good must have outweighed the questionable, it would seem self-evident that a jury charge is not a mere aggregation of equally or arbitrarily weighted assertions; that a correct appreciation of what the charge conveys cannot be had apart from careful attention to the order of the charge, the relation between the various statements made, the emphasis which a court may on occasion supply and the nature of the appeal made to the jurors. The portion of the charge here at issue was not only obviously intended as an emphatic and ultimate statement of the principle most elemental to the outcome of a criminal trial, it appealed directly to the jurors' personal experience, positing an absolute equivalence in decisional criteria between important decisions

the jurors made in their daily lives and the important decision they were about to make as to the defendant. It simply cannot be said that this very accessible, prominently placed and emphatically delivered misstatement of what constituted proof beyond a reasonable doubt was, in any way, neutralized by other portions of the charge or, indeed, that it was not the reasonable doubt instruction to which the jurors hewed as they came to their verdict.

Accordingly, the judgment of the Supreme Court, New York County (Rena K. Uviller, J.), rendered June 17, 1993, convicting defendant of burglary in the second degree and criminal trespass in the second degree, and sentencing him, as a second felony offender, to concurrent prison terms of 5 to 10 years and 1 year, should be reversed and the matter remanded for a new trial.