NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 104

No. 2017-378

| | |
|---|---|
| Lionel Beasley | Supreme Court |
| | |
| | On Appeal from |
| v. | Employment Security Board |
| | |
| Department of Labor | May Term, 2018 |
| (Champlain College, Inc., Employer) | |

Michael Harrington, Chair

Kelli Kazmarski, Vermont Legal Aid, Inc., St. Johnsbury, for Plaintiff-Appellant.

Dirk Anderson, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.      **SKOGLUND, J.** Claimant Lionel Beasley appeals a decision of the Employment Security Board, which denied him unemployment compensation benefits because it found that he performed services for an educational institution and was considered to have a reasonable assurance to perform services in a similar capacity for the next regularly scheduled academic term under 21 V.S.A. § 1343(c)(1). We affirm.

¶ 2.      The relevant factual background is as follows. Claimant was first employed by Champlain College as an adjunct professor during the 2015-2016 academic year—he taught three classes during both the fall and spring terms. At the end of the spring 2016 term, claimant applied for unemployment compensation benefits. Although his claim was initially denied by a claims adjudicator, on appeal, an administrative judge reversed and granted benefits. In granting benefits, the administrative judge noted that because claimant had not received an employment offer letter

for the upcoming academic term and had been notified that at least one of his classes may not be offered due to low enrollment, "the uncertainties for the upcoming term are sufficiently great that [claimant] cannot be said to have a reasonable assurance of returning to the same or similar work that he performed in the previous academic term."

¶ 3. Claimant was then contracted for the 2016-2017 academic year. During both the fall and spring terms, he taught the same three classes as he did the previous academic year. The employment offer letter he received for the spring 2017 term contained the following relevant information: "This appointment is contingent on class size. Classes may be cancelled due to low enrollment. If this class is cancelled, or re-assigned to a full time faculty member, you shall be paid $1,000 provided you signed and returned this letter within 15 days of the date of the letter."

¶ 4. At the end of the spring 2017 term, he again applied for unemployment compensation benefits. Claimant's claim was denied by a claims adjudicator, who found that he had a reasonable assurance of employment during the following term. Claimant appealed the denial, an evidentiary telephone hearing was held, and an administrative judge upheld the denial of benefits. The administrative judge agreed with the claims adjudicator that claimant had reasonable assurance to perform the same services during the next academic term and noted that claimant "and his attorney want[ed] to interpret the term 'reasonable assurance' as an absolute guarantee of employment, and that simply is not the correct interpretation." The administrative judge went on to comment that "the Department [of Labor] must only find that it is highly probable that the same job is available, and the credible facts in the record show[ed] that to be the case in this instance." Claimant appealed the administrative judge's decision to the Employment Security Board. After hearing and review, the Board issued a decision upholding the denial because it found the administrative judge's conclusions "factually supported and legally correct." Claimant appeals the Board's decision.

¶ 5.    In order to be eligible to receive unemployment compensation benefits in Vermont, an individual must meet certain conditions set forth in 21 V.S.A. § 1343(a).[1]  However, an individual who satisfies § 1343(a)'s requirements may still be precluded from receiving unemployment compensation benefits.  Under § 1343(c)(1), if an individual performs services "in an instructional . . . capacity for an educational institution," benefits are unavailable "during the period between two successive academic years or terms . . . if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms."

¶ 6.    In December 2016, the U.S. Department of Labor issued an Unemployment Insurance Program Letter (Program Letter) outlining a multi-step process for states to use when determining whether a claimant has a "contract" or "reasonable assurance of employment" in the relevant part of the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(6)(A), to which the Vermont statute directly correlates.[2]  The Program Letter explains that "[b]efore making a determination about whether there is a contract or reasonable assurance, the state must determine whether the employment offered the following academic year or term . . . meets three prerequisites."  First, "[t]he offer of employment may be written, oral, or implied, and must be a genuine offer, that is, an offer made by an individual with actual authority to offer employment."  Second, "[t]he employment offered in the following academic year or term . . . must be in the same capacity . . . as the previous academic year's or term's employment."  And third, "[t]he economic conditions of the job offered may not be considerably less in the following academic year or term . . . than in the first academic year or term."  If any of the prerequisites are not met, the state

_____

[1]  Whether or not Beasley satisfied § 1343(a)'s requirements is not at issue, and thus we need not outline such requirements here.

[2]  The Vermont Department of Labor concedes that, given the requirements of the Federal Unemployment Tax Act that mandate state unemployment laws to conform with its provisions, the Program Letter is binding on the Department absent any express statutory provision to the contrary.

3

"cannot deny the claimant [unemployment compensation benefits] based on the between and within term denial provisions."

¶ 7.     If all three prerequisites are met, "the state agency must next determine whether the offer is a contract," which the Program Letter defines as "an enforceable, non-contingent agreement that provides for compensation: (1) for an entire academic year; or (2) on an annual basis." If the state agency finds that no contract exists, it must then "determine whether the claimant has a reasonable assurance to perform professional services in the following academic term or year." The Program Letter outlines findings a state agency must make "in determining if the claimant has a reasonable assurance." First, the state agency must determine "[i]f any contingencies in the offer are within the employer's . . . control," meaning "contingencies where the employer has the ability to satisfy the contingency." If contingencies are within an employer's control, the claimant does not have a reasonable assurance and thus is entitled to unemployment compensation benefits if otherwise eligible. Next, "[t]he state agency must analyze the totality of [the] circumstances to find whether it is highly probable that there is a job available for the claimant the following academic year or term." The Program Letter outlines some factors to consider, including funding, "enrollment, the nature of the course . . . , the claimant's seniority, budgeting and assignment practices of the school, the number of offers made in relation to the number of potential teaching assignments, the period of student registration, and any other contingencies." And, finally, "[i]f the offer contains a contingency, the state agency must give primary weight to the contingent nature of the offer," which requires "the state agency to find whether it is highly probable that the contingency will be met." The Program Letter clarifies that "[t]he term 'highly probable' is intended to mean it is very likely that the contingency will be met." "If it is not highly probable the contingency will be met, there is no reasonable assurance because the contingent nature of the offer outweighs any other facts indicating that the claimant has a 'reasonable assurance.' "

4

¶ 8.    On appeal, claimant argues that he is entitled to unemployment compensation benefits because he had no contract or reasonable assurance of employment and that the Board did not properly analyze his claim in accordance with the Program Letter's guidance. Claimant asserts that the Board made incomplete findings of fact, which did not identify all of the contingencies contained in the plain language of claimant's past employment offer letters, and that a complete and accurate list of findings based on the plain language of the employment offer letter cannot support the Board's legal conclusion that claimant had reasonable assurance of employment. And, finally, claimant posits that public policy and the purposes underlying Vermont's unemployment compensation statutes dictate that claimant and other adjunct faculty should be entitled to benefits because they are unemployed and have no reasonable assurance of future employment.

¶ 9.    "Our review of decisions by the Employment Security Board is highly deferential." 863 To Go, Inc. v. Dep't of Labor, 2014 VT 61, ¶ 8, 196 Vt. 551, 99 A.3d 629. "When reviewing a Board decision, this Court must determine whether the evidence before the Board reasonably tends to support its findings and whether the findings in turn support the Board's conclusions and decisions." Harrington v. Dep't of Emp't Sec., 142 Vt. 340, 344, 455 A.2d 333, 336 (1982) (quotations and alterations omitted). We "generally defer to [the Board's] interpretations of the statutes it is charged with administering," and we "will uphold its factual findings unless clearly erroneous, and its [legal] conclusions if reasonably supported by the findings." Blue v. Dep't of Labor, 2011 VT 84, ¶ 6, 190 Vt. 228, 27 A.3d 1096. In Vermont, "[t]he claimant has the burden of showing his initial eligibility for benefits." Id. ¶ 7 (quotation omitted). The Program Letter explains that "the state agency is responsible for determining whether a claimant has a 'reasonable assurance' of performing services the following academic year" and that "states must follow regular fact-finding procedures for determining a claimant's eligibility." It goes on to clarify that "[t]his does not, however, relieve claimants or employers of the responsibility to provide sufficient information to the state agency to make a determination when requested to do so."

¶ 10.　First, claimant appears to argue in his brief that his claim does not satisfy the three prerequisites required to advance to the consideration of whether a contract or reasonable assurance of employment existed. However, in his written argument to the Board below, claimant conceded that "there is no dispute that the offer made by the employer did meet the three prerequisites necessary to advance to the 'contract' and 'reasonable assurance' analysis." Therefore, we conclude that the Board properly proceeded to the contract analysis. And, because it was not disputed that claimant had not received a written offer or contract from the college for the following term at the time he filed his claim, the Board correctly proceeded to the reasonable assurance analysis.

¶ 11.　Next, claimant asserts that the Board erred in its reasonable assurance analysis by making incomplete findings of fact. The relevant part of the employment offer letter from the college to claimant states: "This appointment is contingent on class size. Classes may be cancelled due to low enrollment. If this class is cancelled, or re-assigned to a full time faculty member, you shall be paid $1,000 provided you signed and returned this letter within 15 days of the date of the letter."[3] In its findings, the Board determined that claimant's employment "was contingent on class size, and could be cancelled due to low enrollment." Claimant argues that this finding of fact was incomplete because it failed to identify (1) the distinction between a contingency based on class size and one based on low enrollment and (2) another alleged contingency that a class could be reassigned to a full-time faculty member by the college for any reason.

¶ 12.　Claimant asks this Court to draw a distinction between class size and low enrollment in order to read two contingencies into the employment offer letter, arguing that class size is within the control of the college while low enrollment is not. He properly posits, as the

_____

[3] As explained above, it is not disputed that Beasley had not yet received a written offer letter for the 2017-2018 academic year at the time of the July 6, 2017 hearing before the administrative judge. However, neither party seems to dispute that, if and when Beasley received the written offer, it would contain language that was similar or identical to the previous employment offer letter.

6

Program Letter explains, that a contingency based on enrollment is not within an employer's control. The college has little control over low enrollment—it cannot control which classes students choose to take. He continues that class size, on the other hand, is under the college's control because it can use class size as a point of marketing and pride—it could determine it should break up a large class into smaller classes to decrease its student-to-teacher ratio. He also asks this Court to read the reassignment clause as a third, separate contingency. Claimant posits that the college has unbridled discretion to reassign a class to a full-time faculty member for any purpose. Because he asserts that the class-size and faculty-reassignment contingencies are within the employer's control, claimant argues that he does not have reasonable assurance of employment and is entitled to unemployment compensation benefits.

¶ 13. We disagree, and upon a review of the record below and the plain language of the employment offer letter as a whole, we conclude that the Board's findings are complete and supported by the record and thus are not in error. The Board found that claimant's employment "was contingent on class size, and could be cancelled due to low enrollment." It then went on to conclude that it was highly probable that the contingency would be met—that all three of claimant's courses would fill in the next term—and therefore he had a reasonable assurance of employment. Although the Board did not strictly outline the three-step analysis of the Program Letter, its findings make it clear that it properly conducted its analysis.

¶ 14. First, the Board found that claimant's employment was subject to one contingency—class size or low enrollment—and that contingency was not within the college's discretion. When read in the context of the record, the administrative judge's decision, the Board's decision, and claimant's past employment offer letters, it can be concluded that the Board interpreted "low enrollment" as essentially synonymous with "class size." Students' choices not to take a course taught by claimant—"low enrollment"—could result in a class that does not meet minimum enrollment requirements—"class size." This could lead to two outcomes—cancellation or reassignment. Following the Board's reading, the only contingency is whether or not students

7

choose to enroll in claimant's courses—something that is entirely outside the control of the college and can lead to class size issues resulting in either cancellation or reassignment. We see no basis in the record to support a finding that the contract allows the college to do what claimant suggests—break up classes to improve ratios or reassign classes to full-time faculty for reasons other than low enrollment.

¶ 15. The Board, when determining whether a claimant has a reasonable assurance of employment, is required to conduct a reasoned analysis based on the record before it. It is not required to make express findings tracking the Program Letter if its findings otherwise indicate that it considered the required factors. Therefore, the Board's reasoning is not per se erroneous simply because it did not explicitly announce that a contingency was or was not within the control of an employer or that something was simply an outcome of a contingency instead of a contingency itself.

¶ 16. After finding that no contingencies were within the college's control, the Board looked at the totality of the circumstances and considered whether it was highly probable that the identified contingency would be satisfied. The Board exercised its discretion, reviewed the record before it, and decided that the administrative judge's conclusions were factually supported and legally correct. It reiterated that claimant had "testified that he had taught three courses a semester for four consecutive semesters, and that the three courses had been filled all four times, although one course came close to not filling." From these factual findings, it determined that claimant's "employment history was sufficient to conclude that it was highly probable that all three courses would fill [the following term], and that therefore [claimant] had a reasonable assurance of continued employment." The Board's findings are complete and supported by the record and fully support its legal conclusions. Therefore, we conclude that the Board did not err in its reasonable assurance analysis.

¶ 17. Finally, claimant argues that public policy and the underlying purposes and goals of Vermont's unemployment compensation statutes dictate that adjunct instructors should be

8

entitled to unemployment compensation benefits. Institutions of higher education may be driven by the economic benefits they receive to increasingly utilize adjunct professors; however, this Court's review of the Board's decision is limited to enacted statutes. If the Legislature determines that the plight of adjunct professors like claimant is deserving of additional or more specific protections, they must amend the current unemployment compensation statutes. It is not the role of this Court to do so. See, e.g., Fleece on Earth v. Dep't of Emp't & Training, 2007 VT 29, ¶ 28, 181 Vt. 458, 923 A.2d 594 ("[I]t is up to the Legislature to decide whether the statute should be adjusted to accommodate current employment trends."); Sirloin Saloon of Shelburne, Rutland, & Manchester, Inc. v. Dep't of Emp't & Training, 151 Vt. 123, 129, 558 A.2d 226, 229-30 (1989) ("[T]he policy issue is for the Legislature, not this Court, where as here the statute is plain on its face."); Littlefield v. Dep't of Emp't & Training, 145 Vt. 247, 257, 487 A.2d 507, 512 (1984) ("[T]he Court is not free to enlarge the statute's scope by an unwarranted interpretation of statutory language." (quotation omitted)).

Affirmed.

FOR THE COURT:

_____
Associate Justice