NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 46

No. 24-AP-062

In re Butterfly Kisses Child Care Center, Inc. and
Cindy Boyce

Supreme Court

On Appeal from
Agency of Education

January Term, 2025

Sarah Katz, Hearing Officer

George E. H. Gay, Law Office of Lauren S. Kolitch, PLLC, Stowe, for Petitioners-Appellants.

Charity R. Clark, Attorney General, and Alison L.T. Powers, Assistant Attorney General,
  Montpelier, for Respondent-Appellee State.


PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.    **CARROLL, J.**  Childcare provider Butterfly Kisses Child Care Center, Inc. and its owner Cindy Boyce[1] appeal a decision of the Agency of Education (AOE) to terminate and disqualify provider from participating in the Federal Child and Adult Care Food Program (CACFP) based on provider's failure to correct noncompliance with program requirements.  Provider argues that the recurring serious deficiencies found by AOE were de minimis and did not require termination.  Provider also argues that the AOE hearing officer committed reversible error by allowing the parties to submit post-hearing documentation.  We hold that hearing officer applied the appropriate standard in terminating and disqualifying provider from the program.  As to the

---

[1] The center and its owner are referred to collectively as provider.

post-hearing submissions, we conclude that provider did not properly preserve this argument for appeal and, in any event, has failed to demonstrate reversible error. We therefore affirm.

## I. Background

¶ 2. CACFP is a food-service program established by the U.S. Department of Agriculture (USDA) and regulated by federal law. See 7 C.F.R. §§ 226.1-226.27. Under CACFP, participating childcare centers receive reimbursement for meals and snacks provided to enrolled children if regulatory requirements are met. The USDA's Food and Nutrition Service administers the program through grants to states. In Vermont, responsibility for administration of CACFP rests with AOE's Child Nutrition Program. AOE provides training and technical assistance to participating institutions, monitors program performance, and conducts audits of participating institutions. See 7 C.F.R. § 226.6(a) (detailing state agency administrative responsibilities).

¶ 3. AOE's training includes program manuals, guides, standardized forms, online training videos, and scheduled trainings. Participating centers must complete five hours of specific training modules for new managers before they are approved for program participation and comply with annual training requirements.

¶ 4. Participating centers must enter a CACFP program agreement with AOE. 7 C.F.R. § 226.6(b)(4)(i). The CACFP program agreement specifies that AOE must reimburse centers for paid, free, and reduced-priced meals and snacks served to students "computed based on the number of meals and snacks claimed and verified by the institution's records." Centers must comply with CACFP regulations and have financial and administrative responsibilities to keep accurate records. The agreement specifies that if an audit or review reveals a deficiency, AOE may require corrective action.

¶ 5. "Seriously deficient" is a term of art used in the federal regulations that is defined as a center "that has been determined to be non-compliant in one or more aspects of its operation" of the CACFP. 7 C.F.R. § 226.2. For participating institutions, serious deficiencies include failing

2

to maintain adequate records, failing to adjust meal orders to conform to participant numbers, failing to perform financial and administrative responsibilities, and other actions affecting the institution's ability to administer the program. 7 C.F.R. § 226.6(c)(3)(ii) (listing serious deficiencies). If a center is seriously deficient, AOE must provide notice to the center and "take corrective action." Id. § 226.6(c)(3)(iii). Corrective action must "fully and permanently" correct the identified serious deficiencies. Id. If corrective action fully and permanently corrects the serious deficiencies "within the allotted time and to the State agency's satisfaction," the agency must notify the participating institution that the agency has "temporarily defer[red] its serious deficiency determination." Id. § 226.6(c)(3)(iii)(B)(1)(i) (emphasis added); see also id. § 226.6(c)(3)(iii)(B) (describing process by which agency must respond to "[s]uccessful corrective action").

¶ 6. If there is noncompliance with a corrective-action plan, the center may be disqualified from future CACFP participation. Further, "[i]f the State agency initially determines that the institution's corrective action is complete, but later determines that the serious deficiency[ies] has recurred, the State agency must move immediately to issue a notice of intent to terminate and disqualify the institution" following procedures outlined in the regulations. Id. § 226.6(c)(3)(iii)(B)(3) (second alteration in original) (emphasis added). As part of this notice of intent to terminate and disqualify, the state agency must specify "[t]he basis for the actions," id. § 226.6(c)(3)(iii)(C)(2), and "[t]he procedures for seeking an administrative review" of the proposed disqualifications. Id. § 226.6(c)(3)(iii)(C)(4).

¶ 7. AOE is tasked with "develop[ing] procedures for offering administrative reviews to institutions" and such procedures "must be consistent" with the requirements outlined in the regulation. Id. § 226.6(k)(1). In part, the required procedures include (1) providing notice of the action being taken or proposed, (2) authorizing legal representation for the institution, (3) making available to the institution "[a]ny information on which the State agency's action was based,"

3

(4) allowing the institution and responsible individuals to "refute the findings . . . in person or by submitting written documentation to the administrative review official," (5) authorizing the institution to "request a hearing" in "addition to, or in lieu of, a review of written information," and (6) requiring that the review official's final decision be issued "[w]ithin 60 days of the State agency's receipt of the request for an administrative review." Id. § 226.6(k)(5). Additionally, the regulations provide that the review official "must make a determination based solely on the information provided by the State agency, the institution, and the responsible principals and responsible individuals, and based on Federal and State laws, regulations, policies, and procedures governing the Program." Id. § 226.6(k)(5)(viii).

¶ 8.     In sum, participating centers are obligated to follow the federal regulations and noncompliance with those standards amounts to a serious deficiency, requiring AOE to take corrective action. Id. § 226.6(c)(3)(ii) (listing serious deficiencies for participating institutions). If deficiencies persist after a corrective-action plan is instituted, AOE must issue a notice of proposed termination and disqualification. Id. § 226.6(c)(3)(iii)(C). Although AOE must provide a process for administrative review of a notice to terminate and disqualify, the serious-deficiency determination is not subject to administrative review. Id. § 226.6(k)(3)(ii).

## II.  Factual Background

¶ 9.     The following facts are undisputed for purposes of this appeal. Provider operates two childcare center sites in Vermont. One site is in Newport, and the other site is in Wells River. Together the sites provide childcare for approximately 100 infants, toddlers, and preschool children. Provider first entered a CACFP program agreement in September 2017. Owner Cindy Boyce and other responsible individuals completed the required CACFP new manager's training in 2017.

¶ 10.     AOE conducted a routine announced administrative review of provider's facilities in January 2019. Several instances of noncompliance with CACFP regulations were identified by

4

the reviewer. Provider submitted evidence of corrective actions, and AOE closed the administrative review.

¶ 11. In April 2022, AOE performed an administrative review of provider's program operations and in July 2022, notified provider that there was noncompliance amounting to serious deficiencies in its operation of CACFP. These included: failure to maintain adequate records, claiming meals not served to participants, claiming a significant number of meals that did not meet meal-pattern compliance, failure to properly monitor sponsored facilities, and failure to perform financial and administrative responsibilities. AOE notified provider that it must "fully and permanently correct all of the serious deficiencies" and failure to do so would result in AOE proposing termination and disqualification from CACFP participation.

¶ 12. Provider submitted an initial corrective-action plan to resolve the serious deficiencies and findings of noncompliance. Over several months, AOE requested and received additional information concerning provider's corrective actions. In April 2023, AOE notified provider by letter that "[b]ased on review of the written corrective action plans and supporting documentation," provider had "fully and permanently corrected the serious deficiencies" cited in the July 2022 Serious Deficiency Notice.

¶ 13. Although AOE deferred a serious-deficiency determination, the letter reiterated that provider was required to fully and permanently implement the corrections to avoid future adverse administrative action. Specifically, the letter stated:

> [AOE] may conduct an unannounced follow-up review to verify the adequacy of the corrective action. If [AOE] finds in the follow-up review, or any subsequent review, that any of the serious deficiencies have not been fully and permanently corrected, [AOE] will immediately propose to terminate [provider]'s agreement and propose to disqualify [provider], and any responsible principals, without any further opportunity for corrective action.

¶ 14. In October 2023, AOE conducted an unannounced site visit to verify the adequacy of the corrective measures. Based on conversations with staff, observations made while on site,

5

and review of provider's CACFP records for the months of June 2023 through September 2023, AOE determined that provider continued to be in noncompliance with program requirements. For example, AOE observed that provider did not maintain required records, failed to have on file CACFP enrollment forms for twenty-five children, incorrectly approved six households for free meals instead of reduced meals, failed to complete the center-use-only sections of the eligibility form, incorrectly reported meal counts, and failed to provide site-monitoring documentation on request.

¶ 15. AOE notified provider by letter that it had found recurring serious deficiencies in its operation of CACFP that had not been fully and permanently corrected. The categories of deficiencies arose from CACFP program requirements regarding (1) student enrollment and eligibility documentation; (2) meal-count validation; and (3) internal monitoring requirements. See 7 C.F.R. §§ 226.17(b)(8), 226.10(c), 226.16(d)(4)(iii). AOE proposed terminating provider from the CACFP and disqualifying it and two of its employees from future CACFP participation as required by the federal regulations.

¶ 16. Provider requested administrative review of the proposed termination and disqualification from CACFP participation. A hearing official was appointed in accordance with the requirements of 7 C.F.R. § 226.6(k)(5)(vii). AOE sent a hearing notice and produced the administrative record prior to the hearing.

¶ 17. Both parties attended the hearing held on December 14, 2023. The hearing officer was an independent and impartial AOE employee. The hearing was scheduled for two hours. At the outset, the hearing officer explained the limited time available and the hearing officer's desire to make sure "everyone feels that they have the opportunity to be fully heard." The hearing officer emphasized that AOE had sixty days to issue a decision and therefore it was important to conclude the proceedings that day. Provider presented its side first and spent over two hours questioning the state director of child nutrition programs. At that point, the hearing officer noted that although

6

the hearing could run over, other matters were scheduled for the room, and they were therefore short on time. The AOE representative offered to submit a response in writing if time did not allow AOE to present its side at the hearing. Provider did not object to this course of action.

¶ 18. Provider continued presenting its case and offered testimony from the owner and an employee regarding the serious deficiencies. Both agreed that the required paperwork was not all in compliance but claimed that it was difficult to get parents to complete forms. The employee admitted that he had made an error in determining eligibility and used the incorrect guideline to approve the free, reduced, or paid meals. With seven-and-a-half minutes remaining, the hearing officer provided each side with three-and-a-half minutes for closing. Provider argued that the errors leading to the serious deficiencies were de minimis and inadvertent and should not result in disqualification or termination. The AOE representative indicated that AOE could respond in writing if provider needed additional time. Provider did not object and proceeded to speak for the remaining time. As the hearing concluded, the hearing officer inquired about a date for submission of the AOE filings. Provider asserted that it was entitled to an opportunity to respond to any AOE filing, and without such opportunity, provider objected to submission of additional documentation. Ultimately, the hearing officer provided the parties with six days to submit additional materials.

¶ 19. On December 20, 2023, AOE submitted a document entitled "Written Testimony and Closing Argument," detailing the factual and procedural history as well as the relevant administrative rules. Provider submitted a "Post Hearing Memorandum" and a written response to AOE's filing. Provider did not dispute AOE's factual assertions. It argued that the record-keeping violations were common, minor errors that did not warrant termination from the program. In its post-hearing submission, provider for the first time argued that the hearing officer's decision allowing the parties to file post-hearing memoranda violated provider's due-process rights, the CACFP handbook, and AOE's review procedures.

7

¶ 20. The hearing officer issued a written decision affirming AOE's proposed action. The hearing officer rejected provider's characterization of the violations as minor, noting that federal regulations require accurate and verifiable records and explaining that when violations occur, AOE lacks discretion to ignore them. As to acceptance of the post-hearing memoranda, the hearing officer noted that provider was allotted the entirety of the three-and-a-half-hour hearing and agreed to allow AOE to submit written argument to avoid a second day of hearing. The hearing officer emphasized that provider was afforded a full opportunity to respond and did so by submitting two post-hearing filings. In sum, the hearing officer found that the serious deficiencies were not fully and permanently corrected and therefore AOE properly terminated and disqualified provider from CACFP. Provider filed this appeal.

III. Discussion

¶ 21. Provider argues that AOE abused its discretion when it terminated and disqualified it for violations that provider views as de minimis. Provider also argues that the hearing officer abused her discretion and violated its due-process rights by allowing the parties to submit post-hearing filings. We conclude that the record supports the hearing officer's decision on the merits and that provider's objection to the post-hearing filings was not preserved for review.

A. Basis for Termination and Disqualification

¶ 22. Provider first argues that not all program violations rise to the level of a serious deficiency and AOE abused its discretion when it proposed to terminate and disqualify provider for repeated program violations that provider claims were "de minimis administrative errors." The record supports the hearing officer's decision that AOE gave provider an opportunity to engage in corrective action but that serious deficiencies persisted, necessitating provider's termination and disqualification from CACFP.

¶ 23. On appeal from an agency decision, this Court defers to an agency's "interpretations of the statutes it is charged with administering," and upholds "its factual findings

8

unless clearly erroneous, and its [legal] conclusions if reasonably supported by the findings." Beasley v. Dep't of Labor, 2018 VT 104, ¶ 9, 208 Vt. 433, 199 A.3d 553 (alteration in original) (quotation omitted). Appellate review is thus "limited to determining whether the [agency] applied the proper legal standard, whether the evidence before the [agency] reasonably supports its findings, and whether the [agency]'s findings reasonably support its conclusions." In re E.C., 2010 VT 50, ¶ 6, 188 Vt. 546, 1 A.3d 1007 (mem.). In reviewing the sufficiency of the agency's findings, "we will construe the record in a manner most favorable to the [agency's] conclusions." Id. (quotation omitted).

¶ 24. Provider contends that AOE had discretion to determine if provider's noncompliance with program requirements was severe enough to constitute a serious deficiency and abused that discretion by terminating it without sufficient reason. Provider's arguments misunderstand the federal requirements and the scope of the administrative review. As explained above, serious deficiencies are defined by the federal regulations, and once found, must be addressed through corrective action. The fact that an error is commonplace or unintentional does not preclude it from being a serious deficiency. Moreover, a serious-deficiency determination is not subject to administrative review. See 7 C.F.R. § 226.6(c)(3)(iii). The sole question for the hearing officer was whether AOE complied with program requirements by recommending to terminate and disqualify provider from the program.

¶ 25. The record supports the findings that AOE found violations that constituted "serious deficiencies" under the regulations, followed the applicable federal regulations and its own procedures in requiring corrective action to remediate the deficiencies, and then proposed removal after noncompliance was not corrected. AOE lacked authority or discretion to waive enforcement of the corrective action required by the regulations. Therefore, the hearing officer acted within her discretion in finding that AOE established by a preponderance of the evidence

9

that provider's noncompliance was not fully and permanently corrected and warranted termination and disqualification from the program.

¶ 26. Provider argues that the violations were "minor," relying on an AOE email listing "common violations," which included some of provider's errors. Provider claims that this email demonstrates that these common errors could not be serious deficiencies. The email was a type of technical assistance, cautioning centers on common mistakes; it was not an exclusion of these frequent violations from the definition of serious deficiencies provided by regulation. State agencies implementing the CACFP must offer technical assistance to centers to help enable success in meeting program requirements. See 7 C.F.R. § 226.6(m) (requiring state agency to provide "technical and supervisory assistance to institutions and facilities to facilitate effective Program operations, monitor progress toward achieving Program goals, and ensure compliance" with all other relevant federal laws and regulations). As the AOE employee testified, AOE seeks to "take proactive steps to ensure that [a common issue] doesn't occur in other places."

¶ 27. The hearing officer acted within her discretion in affirming AOE's recommendation to terminate and disqualify provider. The decision was reasonable and based upon the largely undisputed factual record. Therefore, we affirm AOE's decision to terminate and disqualify provider from the CACFP.

## B. Post-Hearing Submissions

¶ 28. Next, provider argues that the hearing officer violated agency procedures by accepting written documentation from both parties following the close of the administrative hearing. Provider points to AOE's serious-deficiency procedures requiring written documentation to be submitted prior to the administrative review. AOE's procedures are based on the federal regulations, which indicate that "[a]ll documentation must be submitted prior to the hearing." Vt. Agency of Educ., CACFP Serious Deficiency Procedure, 6, https://education.vermont.gov/sites/aoe/files/documents/edu-nutrition-cacfp-serious-deficiency-

10

procedure.pdf [https://perma.cc/8AVT-L8LE]. In addition, the parties' hearing notice stated that "[t]he hearing shall be the final opportunity for the parties to present any evidence or argument. No further evidence or argument shall be received by the hearing official after the hearing date." We conclude that provider did not adequately preserve the question of whether the hearing officer had discretion to allow post-hearing submissions because provider did not raise the argument in a timely manner. To the extent it was preserved, we conclude that allowing post-hearing submissions was within the hearing officer's discretion because it was not arbitrary or discriminatory and did not prejudice provider.

¶ 29. On appeal from an administrative decision, this Court does "not address arguments not properly preserved for appeal." In re Entergy Nuclear Vermont Yankee, LLC, 2007 VT 103, ¶ 9, 182 Vt. 340, 939 A.2d 504. It is important for parties to raise issues in the original forum in a timely fashion to give that tribunal an opportunity to rule on the issue. "[A]llowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error, a policy we have admonished." Id. (quotation omitted). An objection must be presented "with specificity and clarity to give the original forum a fair opportunity to rule on it." Id. ¶ 10 (quotations omitted).

¶ 30. Here, provider did not sufficiently raise the issue brought on appeal to preserve it for our review. Several times during the hearing AOE suggested making a written submission in lieu of oral argument to allow provider more time at the hearing to present its case. At no point during the hearing did provider object to this alternative; provider assented and used all the time available for the hearing. After the hearing was over and the time expired, provider objected to submission of written filings, on the basis that the hearing officer could not accept written materials from AOE unless provider also had an opportunity to respond. This is not the argument made on appeal.

11

¶ 31. It was not until provider's post-hearing response to AOE's filing that provider first challenged the filing of post-hearing documents on the basis that post-filing submissions contravened the serious-deficiency process. This was much too late in the proceedings to adequately present the issue so that the hearing officer had a reasonable opportunity to rule on it. See Hoffer v. Ancel, 2004 VT 38, ¶ 19, 176 Vt. 630, 852 A.2d 592 (mem.) (holding that argument presented to trial court in reply to motion was made "too late to preserve it" for appeal). Because provider did not raise the issue now presented on appeal in a timely manner and with the specificity and clarity required, it was not preserved for our review.

¶ 32. In any event, even if preserved, we conclude that the hearing officer had discretion to allow post-hearing filings given that the rule was procedural and not substantive, and provider was not prejudiced by its waiver. "Generally, administrative agencies must follow their own regulations until they rescind or amend them." In re Champlain Parkway SW Discharge Permit, 2021 VT 34, ¶ 12, 214 Vt. 561, 256 A.3d 75 (collecting cases). The U.S. Supreme Court adopted an exception in American Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538-39 (1970), which allows an agency to waive a procedural rule "adopted for the orderly transaction of business" if the waiver does not result in "substantial prejudice." This Court adopted American Farm Lines as a "sound principle of state administrative law." Champlain Parkway, 2021 VT 34, ¶ 16. We determined that failing to do so "would force agencies to adhere inflexibly to all their procedural rules, producing irrational consequences in many cases and resulting injustice" or leading to "unnecessary administrative inefficiency." Id.

¶ 33. For the exception to apply, "the agency action must first and foremost be consistent with governing statutes." Id. ¶ 17; see In re Stowe Cady Hill Solar, 2018 VT 3, ¶ 21, 206 Vt. 430, 182 A.3d 53 (observing that agency regulations cannot be "applied in a way that exceeds the statutory mandate under which the regulation was promulgated"). "Second, the rule at issue must be a procedural rule adopted for the orderly transaction of business to aid the agency in exercising

12

its discretion, not one intended to confer important procedural benefits upon individuals." Champlain Parkway, 2021 VT 34, ¶ 17 (citing Am. Farm Lines, 397 U.S. at 538-39). "Third, the agency action must not substantially prejudice a complaining party." Id. "Fourth, the agency action cannot constitute a failure to exercise independent discretion mandated by regulation." Id. Finally, the agency's departure from its own policy "cannot rest on bases that are arbitrary, unreasonable, or discriminatory." In re Apple Hill Solar LLC, 2019 VT 64, ¶ 25, 211 Vt. 54, 219 A.3d 1295.

¶ 34. The hearing officer's action to allow post-hearing submissions by both parties meets the test in American Farm Lines. As to the fourth and fifth factors, the hearing officer exercised "independent discretion," Champlain Parkway, 2021 VT 34, ¶ 17 (citing Am. Farm Lines, 397 U.S. at 538-39), and the discretion was exercised for reasonable, nonarbitrary reasons. The hearing officer decided to allow the post-hearing submissions for reasons of expediency, allotting as much time as possible for provider to present its case.

¶ 35. In addition, the hearing officer's decision was consistent with the enabling federal regulations, which do not prohibit post-hearing submissions. The regulatory scheme provides that an appealing institution must be informed of the basis for the proposed action and allowed to respond with written submissions or to request a hearing. See 7 C.F.R. § 226.6(k)(5)(iv) (providing that "[a]ny information on which the State agency's action was based must be available to the institution"), id. § 226.6(k)(5)(vi) (requiring hearing if requested). Provider was granted both here. Provider argues that the hearing officer violated federal guidance in the USDA's CACFP Serious Deficiencies Handbook. However, the Handbook is not a binding rule or regulation; it is guidance for state organizations to consider when establishing their own administrative rules. The USDA explains that state agencies "can . . . use the information in [the Handbook] to develop internal policies and procedures for their oversight and implementation." USDA, Serious Deficiency, Suspension, & Appeals for State Agencies and Sponsoring

13

Organizations, Program Handbook, 8, https://www.fns.usda.gov/cacfp/serious-deficiency-suspension-appeals-state-agencies-and-sponsoring-organizations [https://perma.cc/E96C-2GN9].

¶ 36.    Second, the limit on post-hearing memoranda is a "procedural rule" aiding the agency in exercising its discretion and is not intended to confer "important procedural benefits upon individuals." Champlain Parkway, 2021 VT 34, ¶ 17 (citing Am. Farm Lines, 397 U.S. at 538-39).  Requiring the parties to submit their materials in advance of the hearing and limiting the use of post-hearing memoranda keeps the process expedient and allows the review process to conclude in an efficient manner.[2]  The limitation is not designed to confer substantive rights on the parties.

¶ 37.    The dissent claims that the rule against post-hearing submissions is substantive and not subject to waiver because it is meant to ensure that centers have a meaningful opportunity to respond to AOE materials.  Post, ¶ 54.  Respectfully, the allowance of post-hearing submissions had no impact on provider's ability to respond.  Provider had ample opportunity to present its case and respond to AOE's materials.  In advance of the hearing, provider had the administrative record that formed the basis of the proposed disqualification and termination.  Provider had the entirety of the hearing to present its case and question AOE employees.  The hearing officer allowed post-hearing submissions by both parties and provider filed its own post-hearing memoranda and also responded to AOE's filing.  Provider was not deprived of any opportunity to challenge AOE's submission.  For these reasons, this case differs from those cited by the dissent, in which procedural rules were not subject to waiver because they secured "a party's ability to offer a meaningful response to evidence offered by an opposing party." Post, ¶ 54.  Here, the hearing officer allowed

---

[2] As the hearing officer noted, CACFP regulations provide that a hearing officer must issue a final decision within sixty days of the agency's receipt of the request for an administrative review.  7 C.F.R. § 226.6(k)(5)(ix).  Limiting the filing of post-hearing memoranda helps AOE comply with this requirement.

14

both parties to make post-hearing submissions; there was no change to the rules that limited provider's ability to respond.

¶ 38. Most importantly, the hearing officer's decision did not result in "substantial[] prejudice" to provider. Champlain Parkway, 2021 VT 34, ¶ 17 (citing Am. Farm Lines, 397 U.S. at 538-39). AOE's submissions did not contain any new information or claims. It filed a seven-page "closing argument" and other "supporting documentation." The closing argument outlined the factual and procedural background, most of which was not disputed by provider. The supplemental supporting documentation included AOE's "Administrative Review Procedure," the CACFP 2018-2019 administrative review of provider, and two "Master Lists" of enrollment for August and September 2023, which originally came from provider. Provider already had access to each document: the Administrative Review Procedure was available on AOE's website; the 2018-2019 administrative review was in the administrative record; and the enrollment lists were provider's own documents.

¶ 39. AOE's post-hearing submissions merely allowed it to respond to provider's arguments from the hearing, as it was entitled to do under the regulations. See 7 C.F.R. § 226.6(k)(5)(vi) (requiring state agency have chance to respond to testimony). The AOE submissions did not present any information that had not already been made available to both provider and the hearing officer prior to the hearing. Provider seeks to characterize the post-hearing submissions as being "replete with new facts, rebuttal testimony, and references to [CACFP regulations] that were not raised in the . . . proposed termination letter." However, the record indicates otherwise. AOE's closing argument recites the administrative record of provider's participation in the CACFP. Notwithstanding provider's general statements, provider does not particularly identify new or allegedly incorrect facts. Moreover, the references to the CACFP regulations are the same as those in the CACFP program agreement and in the various

15

correspondence from AOE to provider concerning deficiencies found during administrative reviews.

¶ 40.   On appeal, provider identifies no way in which it was prejudiced by the post-hearing submission allowance.   Provider's substantive argument was not based in a factual disagreement.   Provider conceded that it did not comply with all the regulations, but asserted that these shortcomings were too common or minor to amount to serious deficiencies.   As explained above, this legal assertion was incorrect.   Although provider broadly objects to the post-hearing information filed by AOE, it does not identify any factual error that it would seek to challenge at a new hearing or how any of AOE's information impacted the hearing officer's decision.   In adopting the American Farm Lines exception, this Court emphasized that requiring agencies to strictly adhere to procedural rules without the exception would produce "irrational consequences" and create "unnecessary administrative inefficiency."   Champlain Parkway, 2021 VT 34, ¶ 16. Remanding for a new administrative hearing in this case would result in such a circumstance.   It would be a profound waste of administrative and judicial resources to grant provider a new administrative hearing where it has not shown how this would change the outcome of the case in any way.[3]

¶ 41.   In sum, the hearing officer allowed post-hearing submissions for a valid procedural reason and with fairness to both sides.  Allowing post-hearing submissions in this instance was not

---

[3]   Provider broadly asserts that the hearing officer's decision to allow post-hearing submissions violated its due-process rights but does not explain how.  Due process requires "that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence."  Goldberg v. Kelly, 397 U.S. 254, 268 (1970).  Ultimately, the "fundamental requisite of due process of law is the opportunity to be heard."  Id. at 267 (quotation omitted).

Provider had adequate notice of the proposed termination, including identification of the specific program violations, and was offered significant opportunity to present its side.  Provider took the entirety of the administrative hearing to present its case.  Additionally, provider submitted its own post-hearing documentation and argument.  Given the procedurally proper notice and the multiple opportunities to respond, provider has not demonstrated a deprivation of due process.

arbitrary or discriminatory and did not prejudice provider. The hearing officer's decision thus fell within the <u>American Farm Lines</u> exception.

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice

¶ 42. **COHEN, J., dissenting.** The Vermont Agency of Education (AOE) terminated and disqualified petitioners Butterfly Kisses Child Care Center, Inc., and its owner, Cindy Boyce, from participation in the federal Child and Adult Care Food Program (CACFP) based on a hearing officer's finding that, although there was no evidence of intentional dishonesty or fraud, petitioners nonetheless failed to fully and permanently correct certain "serious deficiencies" by stringently satisfying each of the procedural commitments in their corrective-action plan. Ironically, however, AOE failed to adhere to its own administrative-review procedures in reaching this decision because the hearing officer summarily waived a rule barring post-hearing submissions. The majority concludes that petitioners did not preserve their challenge to this ruling, but nonetheless proceeds to analyze the issue, reasoning—in what I view as dicta—that the agency had discretion to waive this rule under the exception first articulated by the U.S. Supreme Court in <u>American Farm Lines v. Black Ball Freight Service</u>, 397 U.S. 532 (1970), and adopted by this Court in <u>In re Champlain Parkway SW Discharge Permit</u>, 2021 VT 34, 214 Vt. 561, 256 A.3d 75. I would instead conclude that petitioners' argument is preserved, and that the <u>Champlain Parkway</u> exception does not apply because AOE's bar on post-hearing submissions confers an important procedural benefit on those facing termination and disqualification from CACFP participation: it secures the fundamental requirement of due process, which is the right to be heard at a meaningful time and in a meaningful manner. I therefore respectfully dissent.

17

¶ 43. Deeply rooted principles of administrative law generally bind an agency to its own rules, policies, and procedures—even where it had no obligation to adopt them in the first instance. See Columbia Broad. Sys. v. U.S., 326 U.S. 407, 422 (1942); Fed. Defenders of N.Y., Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020); Alcaraz v. I.N.S., 384 F.3d 1150, 1162 (9th Cir. 2004); see also Champlain Parkway, 2021 VT 32, ¶ 12 (collecting cases). This well-settled proposition "is often called the Accardi principle after the case with which it is most closely associated, 1954's United States ex rel. Accardi v. Shaughnessy," 347 U.S. 260, though it was first embraced by the U.S. Supreme Court decades earlier in Arizona Grocery Co. v. Atchinson, Topeka & Santa Fe Railway Co., 284 U.S. 370 (1932). 32 C. Wright & A. Miller, Federal Practice and Procedure § 8172 (2d ed. 2025).

¶ 44. As this Court recently recognized, "[w]e do not easily deviate" from the Accardi principle. Champlain Parkway, 2021 VT 34, ¶ 23. In adopting the exception the majority invokes here, we cautioned that it "is strictly circumscribed by American Farm Lines itself and our established principles governing agency application of regulations." Id. ¶ 17; cf. In re Lakatos, 2007 VT 114, ¶ 17, 182 Vt. 487, 939 A.2d 510 (2007) (reasoning that where Board of Dental Examiners "had plainly committed itself to the process . . . in which respondent would be afforded an opportunity to comment on the Board's proposed decision, and respondent plainly relied on that promise in proceeding with the hearing," Board was estopped from refusing to comply with this process). We therefore warned that we will apply the exception to affirm an agency's waiver of its own rule only "when an agency scrupulously satisfies" each of the four criteria outlined in Champlain Parkway. Champlain Parkway, 2021 VT 34, ¶ 23. I believe the justification for such exacting review was well articulated by the Supreme Court of Arkansas: "To protect due process, the courts, in matters pertaining to a governmental entity's observance and implementation of self-prescribed procedures, must be particularly vigilant and must hold such entities to a strict

18

adherence to both the letter and the spirit of their own rules and regulations." Smith v. Denton, 895 S.W.2d 550, 555 (Ark. 1995).

¶ 45. These foundational principles inform my preservation analysis. I recognize, of course, that "[a] party . . . is generally limited on appeal to arguments preserved before the administrative agency." Pratt v. Pallito, 2017 VT 22, ¶ 12, 204 Vt. 313, 167 A.3d 320. But the nature of adversarial proceedings does not lend itself to mechanical application of the preservation doctrine. In determining whether an argument is preserved, we generally ask whether the agency had a "fair opportunity to rule" on the issue prior to our review, such that the purpose of the preservation doctrine is satisfied. Id. ¶ 16 (quotation omitted); see In re Amendment #1 to FY23 Accountable Care Org. Budget Order, 2024 VT 38, ¶ 22, __ Vt. __, 323 A.3d 969 (considering whether purposes underlying preservation rule were served in determining whether issue was adequately preserved for review). Similarly, we do not require preservation where the party claiming error was itself deprived of a fair opportunity to raise the argument below. See, e.g., State v. Vuley, 2013 VT 9, ¶ 39, 193 Vt. 622, 70 A.3d 940 ("[A]n argument truncated by the trial court is normally sufficient to preserve unstated grounds for objection."). Given the record before us and the nature of petitioners' argument, I believe both considerations compel the conclusion that this issue is adequately preserved.

¶ 46. As the majority indicates, at several points during the hearing, counsel for AOE suggested filing "a written submission in lieu of oral argument" in order to allow more time for the presentation of evidence. Ante, ¶ 30 (emphasis added). When the hearing officer turned to the agency for its closing argument, AOE affirmed that it would file a written submission. Petitioners did not object and proceeded to use the remaining time for their own closing argument. The hearing officer subsequently proposed a simultaneous deadline for post-hearing submissions, and petitioners explained, "I think it would be fair, in light of the fact that the State has heard our position, that rather than us submitting these documents at the same time, there ought to be a

19

sequence where the State provides its information and we have an [] opportunity to respond."  The hearing officer flatly rejected this request, stating, "I'm not actually even supposed to, under the rules as I read them, allow any further documentation following the hearing.  I'm doing this as an accommodation for the shortened time period . . . . there's not going to be a written submission and a response period."  Petitioners objected, but the hearing officer maintained her ruling, explaining that the State had not had any opportunity to present "argument."  When AOE later submitted its closing argument, however, it was intermingled with what the agency characterized as "written testimony" and supported by several exhibits that had not been admitted at the hearing.  Petitioners were thus deprived of the opportunity—guaranteed by the agency's own procedures—to respond to this testimony and evidence through cross-examination during the evidentiary hearing.  They could not have objected on this basis during the hearing given that AOE had not disclosed its intention to offer additional testimony and evidence.  See Vuley, 2013 VT 9, ¶ 39.

¶ 47.    Moreover, in making her ruling, the hearing officer expressly acknowledged that she was waiving an agency rule.   As noted above, it is the administrative agency that must "scrupulously satisfy" each aspect of the Champlain Parkway test if we are to affirm such a departure. 2021 VT 34, ¶ 23.  This allocation of responsibility is consistent with " '[a] fundamental norm of administrative procedure' " requiring agencies " 'to treat like cases alike.' "  In re Stowe Cady Hill Solar, LLC, 2018 VT 3, ¶ 21, 206 Vt. 430, 182 A.3d 53 (quoting Westar Energy, Inc., v. Fed. Energy Regul. Comm'n, 473 F.3d 1239, 1241 (D.C. Cir. 2007)).  Due to this affirmative obligation, we have held that where an agency is confronted with evidence that its proposed interpretation of its own regulation conflicts with its past construction of the same rule, the agency "must either reverse its preliminary decision and adhere to its precedent or, in the alternative, articulate a legitimate justification to abandon the prior interpretation."  In re McNamer, 2024 VT 50, ¶ 22, __ Vt. __, 325 A.3d 15.  Of course, that is not precisely the circumstance presented here. But the same fundamental principle shaped our decision in Champlain Parkway—indeed, we

recognized an agency's obligation to treat like cases alike in articulating the final prong of our test: "the agency must apply the rule consistently, not arbitrarily, unreasonably, or discriminatorily." Champlain Parkway, 2021 VT 34, ¶ 17 (citing Stowe Cady Hill Solar, 2018 VT 3, ¶ 21).

¶ 48.    The hearing officer was plainly aware that her contemplated ruling would waive the bar on post-hearing submissions and that petitioners objected to this decision. See Amendment #1 to FY23 Accountable Care Org. Budget Order, 2024 VT 38, ¶ 22. Just as evidence of conflicting precedent obligates an agency, " 'as a matter of administrative procedure,' to identify a valid reason for departing from established law," McNamer, 2024 VT 50, ¶ 22 (quoting In re Apple Hill Solar LLC, 2019 VT 64, ¶ 25, 211 Vt. 54, 219 A.3d 1295)), I believe it was incumbent on the hearing officer—having recognized that she was departing from an AOE rule over a party's objection—to offer a justification for waiver under Champlain Parkway. She had a second opportunity to do so when petitioners raised the issue again in writing, contending that the decision to allow post-hearing submissions was "a clear and material violation of the State's serious deficiency process" and beyond the scope of her discretion. See State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) (explaining that issue is preserved for appeal where presented with specificity and clarity in manner which gives tribunal below fair opportunity to rule on it). In response to petitioner's argument, however, the hearing officer declined to reconsider her ruling and did not offer any basis for her implicit conclusion that she had discretion to do so as a matter of law. For these reasons, I would hold that the issue is adequately preserved.

¶ 49.    This brings me to the merits of petitioners' argument.[4] I write separately because I cannot agree that AOE has "scrupulously satisfie[d]" the second Champlain Parkway criterion,

---

[4] As noted above, given the majority's conclusion that this issue was not preserved, I would characterize its analysis on this point as dicta—"[a]n opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision and therefore not binding even if it may later be accorded some weight." Judicial dictum, Black's Law Dictionary (12th ed. 2024); see Pepin v. Allstate Ins. Co., 2004 VT 18, ¶ 16, 176 Vt. 307, 848 A.2d 269 (recognizing that "dicta . . . is not binding authority"). It is

21

which requires that the rule at issue "be a procedural rule adopted for the orderly transaction of business to aid the agency in exercising its discretion, not one intended to confer important procedural benefits upon individuals." Champlain Parkway, 2021 VT 34, ¶¶ 17, 23. The majority reasons that the bar on post-hearing submissions satisfies this requirement for two reasons: (1) limiting the use of post-hearing memoranda allows the review process to conclude in an efficient manner and within the applicable timeline; and (2) in this case, the majority believes that the hearing officer's decision to waive the rule "had no impact on [petitioners'] ability to respond." Ante, ¶¶ 36-37. I do not see that either rationale is consistent with the inquiry required under our decision in Champlain Parkway.

¶ 50. In my view, the second Champlain Parkway factor calls for us to consider the primary purpose for which the rule at issue was adopted, not any incidental benefit it affords the agency in streamlining proceedings before it, or the consequences of an agency's choice to depart from it in a given case.[5] I therefore believe that the sole question it poses in this case is whether the bar on post-hearing submissions is intended to confer important procedural benefits on those facing termination and disqualification from CACFP. My reading of the relevant case law compels me to answer this question in the affirmative. Considered against the backdrop of precedent, I cannot agree that the bar on post-hearing submissions is a mere "housekeeping" provision of the type an agency is free to waive. Sullivan v. United States, 348 U.S. 170, 173 (1954).

¶ 51. In American Farm Lines, a motor carrier applied to the Interstate Commerce Commission for temporary operating authority to meet urgent transportation needs. The

---

my hope that in determining how much weight to afford the majority's reasoning, future courts will consider the points I set forth below.

[5] This is not to say that the considerations identified by the majority have no place in a Champlain Parkway analysis. In my view, they are appropriately weighed in connection with the third and fourth factors, which ask whether the agency action substantially prejudiced a complaining party and whether it constituted a failure to exercise independent discretion mandated by regulation. Champlain Parkway, 2021 VT 34, ¶ 17. Because I believe that the second criterion is unmet, however, I would not reach those issues. Id. ¶ 23.

Commission's rules mandated that such applications be supported by specific materials and stated that requests for temporary authority would be denied absent adequate compliance with the rules. The Commission granted the application even though it did not strictly comply with the supporting-material requirements, and a group of protesting carriers challenged this decision on the basis that the agency failed to adhere to its own rules. In concluding that the Commission's waiver of these rules was appropriate, the U.S. Supreme Court explained that they "were not intended primarily to confer important procedural benefits on individuals in the face of otherwise unfettered discretion as in Vitarelli v. Seaton." Am. Farm Lines, 397 U.S. at 538-39 (citing Vitarelli v. Seaton, 359 U.S. 535 (1959)) (observing that applicant's "failure . . . to provide these particular specifics did not prejudice the [protesting] carriers in making precise and informed objections to [the] application"). Instead, it reasoned, "the rules were promulgated for the purpose of providing the necessary information for the Commission to reach an informed and equitable decision on temporary authority applications." Id. In this circumstance, the agency had discretion to relax or modify the rule and its decision to do so was "not reviewable except upon a showing of substantial prejudice to the complaining party." Id. at 539.

¶ 52. Though the Court said little more in American Farm Lines, its reference to Vitarelli is particularly instructive here. In that case, it held that where the Department of the Interior gratuitously promulgated rules affording greater procedural protections to employees dismissed for security reasons, the Secretary of the Interior "was bound by the regulations he himself had promulgated for dealing with such cases, even though without such regulations he could have discharged petitioner summarily." Vitarelli, 359 U.S. at 539-40. The Court explained:

> [I]n proceedings of this nature, in which the ordinary rules of evidence do not apply, in which matters involving the disclosure of confidential information are withheld, and where it must be recognized that counsel is under practical constraints in the making of objections and in the tactical handling of his case which would not obtain in a cause being tried in a court of law before trained judges, scrupulous observance of department procedural safeguards is clearly of particular importance.

23

Id. at 540. It noted that the employee challenging his discharge did not receive the benefits of these procedural safeguards, including the right to cross-examine the witnesses against him. Id. at 544-45. Because the proceedings did not conform to the applicable departmental regulations, the Court held the employee's dismissal illegal and of no effect. Id. at 545.

¶ 53. Our application of the second factor in Champlain Parkway was consonant with the federal precedent from which it was derived. In that case, the owner of property adjacent to a roadway project challenged the decision of the Vermont Agency of Natural Resources (ANR) to grant the project a renewed stormwater-discharge permit, arguing that ANR unlawfully waived a filing deadline included in its own regulations. Under the relevant regulation, a permittee seeking renewal was required to file an application for reissuance at least ninety days prior to the permit's expiration. The permittee filed an application for renewal twenty-six days before its permit was set to expire, but ANR accepted the filing as timely and put the renewed permit up for public comment, "essentially waiving the deadline" imposed by its regulation. Champlain Parkway, 2021 VT 34, ¶ 5. Crucially, in concluding the second American Farm Lines criterion was satisfied, we explained that the deadline was not "adopted to allow other parties sufficient time to oppose or otherwise influence the renewal." Id. ¶ 20. Rather, "[l]ike the protesting carriers in American Farm Lines," the adjacent property owner "had an unhindered opportunity to voice its concerns or opposition to the renewal," because the public-comment period was the same regardless of when the application was filed. Id. As we observed, the parties "would have been in the same position if the renewal application had been filed ninety-one days before expiration as they were when it was filed twenty-six days before expiration" because "ANR's substantive review of the permit was no different in the second instance than in the first." Id. ¶ 19.

¶ 54. From my perspective, these cases stand for the proposition that procedural rules securing a party's ability to offer a meaningful response to evidence offered by an opposing party are not subject to waiver under the American Farm Lines exception. See, e.g., Bridges v. Wixon,

24

326 U.S. 135, 153 (1945) (holding that Immigration and Naturalization Service could not disregard its own evidentiary rules governing admission of statements in deportation proceedings, "[f]or these rules are designed as safeguards against essentially unfair procedures"); see also Relation v. Vt. Parole Bd., 163 Vt. 534, 538, 660 A.2d 318, 320 (1995) ("In the realm of fact-finding, the function of procedural protections is to minimize the risk of erroneous decisions."). By ensuring that those facing termination and disqualification from CACFP have an opportunity to respond to all testimony and evidence AOE marshals against them in support of that end, the limitation on post-hearing submissions safeguards "[t]he fundamental requirement of due process," which is "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quotation omitted); see Sec'y, Agency of Nat. Res. v. Upper Valley Reg'l Landfill Corp., 167 Vt. 228, 234-35, 705 A.2d 1001, 1005 (1997) ("A fair trial before an impartial decisionmaker is a basic requirement of due process, applicable to administrative agencies as well as to the courts."); see also Goldberg v. Kelly, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."). To be sure, the rule serves an ancillary purpose in helping to facilitate the timely resolution of such proceedings. But the same can be said of almost any procedural rule, which is why I believe Champlain Parkway calls for the agency—and, on appeal, this Court—to consider instead whether the rule was "intended to confer important procedural benefits upon individuals." 2021 VT 34, ¶ 17.

¶ 55. The regulatory framework at issue here, which offers an almost vanishingly narrow opportunity for review, only heightens the importance of this procedural benefit. See Lopez v. Fed. Aviation Admin., 318 F.3d 242, 247 (D.C. Cir. 2003) (explaining that distinctions between procedural rules benefitting agency and those benefitting individual "are particularly visible in the employment context, where this court has long recognized that, contrary to the type of internal regulations in American Farm Lines, agencies cannot 'relax or modify' regulations that provide

25

the only safeguard individuals have against unlimited agency discretion in hiring and termination"). The purpose of CACFP is "to provide aid to child . . . participants and family or group day care homes for provision of nutritious foods that contribute to the wellness, healthy growth, and development of young children." 7 C.F.R. § 226.1. AOE is responsible for administering the program in Vermont, facilitating its expansion in low-income and rural areas like the ones petitioners explained that they serve, and ensuring effective operation of the program by participating institutions. Id. §§ 226.3(b), 226.6(a). As the hearing officer acknowledged in her decision, the U.S. Department of Agriculture explained that its serious-deficiency process "offers a systematic way for State agencies to take actions allowing institutions to correct serious Program problems and ensures due process." USDA, Serious Deficiency, Suspension, & Appeals for State Agencies and Sponsoring Organizations, Program Handbook, 10, https://fns-prod. azureedge.us/sites/default/files/resource-files/CACFP_Serious_Deficiency_Handbook. pdf [https://perma.cc/C83M-Z5F2] (emphasis added).

¶ 56. The federal regulations, however, expressly prohibit state agencies from offering administrative review of certain actions in connection with the serious-deficiency process, including: "[a] determination that an institution is seriously deficient," "[a] determination by the State agency that the corrective action taken by an institution or by a responsible principal or individual does not completely and permanently correct a serious deficiency," or "[d]isqualification of an institution or a responsible principal or responsible individual, and the subsequent placement on the State agency list and the National disqualified list." 7 C.F.R. § 226.6(k)(3)(ii)-(iv). Though state agencies must offer administrative review for notices of proposed termination and disqualification, see id. § 226.6(k)(2)(iii)-(iv), the regulations provide that "[t]he determination made by the administrative review official is the final administrative determination to be afforded the institution and the responsible principals and responsible individuals," see id. § 226.6(k)(5)(x). In my view, if due process is to be secured through these

26

limited mechanisms of review, AOE must scrupulously adhere to its own procedural commitments.

¶ 57. As the U.S. Supreme Court forcefully stated in Morton v. Ruiz, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." 415 U.S. 199, 235 (1974). Though AOE was not obligated to do so, it chose to adopt an internal procedure limiting post-hearing submissions, thereby conferring "important procedural benefits" on those appearing before it. Champlain Parkway, 2021 VT 34, ¶ 17. I believe that those benefits may not be so lightly withdrawn, and I fear that eliding consideration of those benefits risks applying the American Farm Lines exception in a manner that swallows the rule. I would conclude that the hearing officer lacked discretion to waive the rule and reverse and remand for a fresh hearing. See, e.g., Accardi, 347 U.S. at 268 (1954) (concluding that Attorney General violated own rule in denying application for discretionary suspension of deportation, reversing for new hearing, and noting that while petitioner might not succeed on merits, "at least he will have been afforded that due process required by the regulations in such proceedings"); Picca v. Mukasey, 512 F.3d 75, 78-79 (2d Cir. 2008) (holding that where agency procedure "concerns fundamental notions of fair play underlying the concept of due process," remand is warranted where a petitioner shows that the rule at issue was for his benefit and the agency failed to adhere to it, and no showing of prejudice is required (quotation omitted)). Therefore, I respectfully dissent.

¶ 58. I am authorized to state that Chief Justice Reiber joins this dissent.

_____

Associate Justice

27